# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KARL BROOKINS,
                    Appellant,

                    v.

DEPARTMENT OF THE INTERIOR,
                    Agency.

DOCKET NUMBER
DE-0432-18-0359-I-1

DATE: January 19, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Karl Brookins, Honolulu, Hawaii, pro se.

Deborah E. Yim, Esquire, Lakewood, Colorado, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Limon recused himself and
did not participate in the adjudication of this appeal.

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his removal under 5 U.S.C. chapter 43.  For the reasons set forth below, we GRANT the petition for review, VACATE the initial decision, and REMAND

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

the appeal to the Denver Field Office for further adjudication consistent with *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

¶2     Prior to the removal at issue in this appeal, the agency employed the appellant as a GS-12 Fish Biologist in the Ocean and Coastal Resources Branch, Water Resources Division (WRD) of the National Park Service (NPS). Initial Appeal File (IAF), Tab 8 at 25, 27. As a Fish Biologist, the appellant was responsible for providing "direct technical assistance to parks in the areas of fisheries management, habitat restoration, and population recovery" and "liaison with fisheries professionals in the academic community, as well as regulatory compliance, training, and other professional assistance" in support of the agency's activities. IAF, Tab 10 at 77-80.

¶3     On May 2, 2017, the appellant's supervisor placed him on a 90-day performance improvement plan (PIP) to give him an opportunity to improve his performance to at least minimally successful for critical element 5. IAF, Tab 19 at 83-87. On July 31, 2017, she notified him that he had successfully completed the PIP. IAF, Tab 9 at 96. Just over 5 months later, on January 11, 2018,[2] his supervisor placed him on a second PIP to allow him an opportunity to improve his performance to at least minimally successful in critical elements 1 and 2 by completing specified tasks—namely, for critical element 1, one panel-reviewed funding proposal and, for critical element 2, one approved interagency program initiative—within 42 days. IAF, Tab 8 at 72, Tab 9 at 70-73.

¶4     On May 2, 2018, the appellant's supervisor proposed his removal under chapter 43 for "failure to achieve an acceptable level of performance after

---

[2] The agency also denied the appellant's within-grade increase (WIGI). The appellant appealed both the denial of his WIGI and his placement on the PIP. *Brookins v. Department of the Interior*, MSPB Docket Nos. DE-531D-18-0028-I-1, DE-3443-18-0140-I-1. His petitions for review in those appeals were resolved in separate decisions.

unsuccessful completion of a [PIP]." IAF, Tab 8 at 71-75. She explained that he did not timely complete either project required by the PIP and that his performance was thus unsatisfactory in both critical elements 1 and 2. *Id.* After the appellant responded, the deciding official issued a decision letter removing him effective June 18, 2018. *Id.* at 27-31, 46-52. The appellant filed a Board appeal in which he contested the merits of the removal and raised due process and harmful procedural error affirmative defenses. IAF, Tabs 1, 7, 14, 21-22, 27, 38. After holding the appellant's requested hearing, the administrative judge issued an initial decision affirming his removal. IAF, Tab 40, Initial Decision (ID).

¶5 The appellant has filed a petition for review, the agency has responded, and the appellant has replied to the agency's response. Petition for Review (PFR) File, Tab 1, 3-4.

## ANALYSIS

Although the administrative judge correctly found that the agency met its burden to prove most of the elements of its performance-based charge by substantial evidence, we must remand the appeal for consideration of an additional element.

¶6 At the time the initial decision was issued, the Board's case law stated that, in a performance-based action under 5 U.S.C. chapter 43, an agency must establish by substantial evidence that (1) the Office of Personnel Management (OPM) approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element.[3] *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5

---

[3] Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p).

(2013).[4]  In this case, the administrative judge found that the agency proved all of these elements.  ID at 6-20.  On review, the appellant challenges the administrative judge's determinations that his performance standards were valid, that the agency informed him of the deficiencies in his performance and afforded him a reasonable opportunity to improve, and that his performance remained unacceptable in at least one critical element.[5]  PFR File, Tabs 1, 4.

> *The administrative judge correctly found the performance standards valid.*

¶7        Performance standards must, to the maximum extent feasible, permit the accurate appraisal of performance based on objective criteria.  5 U.S.C. § 4302(c)(1); *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 29 (2010).  Standards must be reasonable, realistic, attainable, and clearly stated in writing.  *Lee*, 115 M.S.P.R. 533, ¶ 29.  Provided these requirements are met, however, the Board will defer to managerial discretion in determining what agency employees must do to perform acceptably in their positions.  *Id.*

¶8        Here, the appellant's Employee Performance Appraisal Plan (EPAP) contained five critical elements, and the agency rated his performance on a five-tiered rating system, in which the possible ratings were exceptional, superior, fully successful, minimally successful, and unsatisfactory.[6]  IAF, Tab 9 at 75-94.  For each critical element, the EPAP set forth three components that must be met

---

[4] Although *White* provides that criterion 3 requires that performance standards must be valid under 5 U.S.C. § 4302(b)(1), the National Defense Authorization Act of 2018 redesignated subsection 4203(b) as subsection 4302(c).  Pub. L. No. 115-91, § 1097(d)(1)(A), 131 Stat. 1283, 1619 (2017).

[5] The appellant has not challenged, and we discern no reason to disturb, the administrative judge's findings that the agency established that OPM approved the agency's performance appraisal system and that the agency communicated the performance standards and critical elements of his position to him.  ID at 5-7; IAF, Tab 7 at 4-5.

[6] OPM approved this five-level performance appraisal system in 2005.  IAF, Tab 10 at 82.

in order to achieve each rating level.  *Id.*  As relevant here, the EPAP specified that, to achieve a rating of minimally successful in critical element 1, the appellant must meet the following requirements:  (1) develop at least one approved peer-reviewed publication, presentation, or webinar; (2) independently develop and submit at least one panel-reviewed funding proposal to provide additional service to parks; and (3) develop at least one new working relation and maintain existing working relationships to accomplish specified tasks.  IAF, Tab 9 at 77.  To achieve a rating of minimally successful in critical element 2, he must meet the following requirements:  (1) participate in at least one collaborative effort that results in tangible benefits to NPS; (2) initiate and develop at least one collaborative effort that results in tangible benefits to NPS; and (3) develop at least one approved interagency program initiative that supports NPS goals.  *Id.* at 80.  For purposes of the annual performance appraisal, the appellant had to meet all three components to achieve a rating of minimally successful; if he failed to do so, he would receive a rating of unsatisfactory in that critical element.  *Id.* at 77, 80.

¶9    In the initial decision, the administrative judge found that critical elements 1 and 2 were written, measurable, and attainable.  ID at 7-11.  He explained that, to the extent the standards required subjective interpretation, it was unavoidable given the qualitative aspects of the appellant's scientific field and the agency's mission.  ID at 9, 11.  In finding the standards attainable, he credited the appellant's supervisor's testimony that two other scientists had been able to satisfy the same standards, in addition to fulfilling their other duties, without complaint.  ID at 9.  Accordingly, he concluded that the performance standards were valid.[7]  ID at 10-11.

---

[7] In assessing whether the appellant's performance standards were attainable, the administrative judge considered but found lacking in credibility the appellant's claim that the status reports he was required to submit to his supervisor during the PIP period took him 8 hours per week.  ID at 9-10.  However, the effect of a PIP requirement on the appellant's ability to successfully complete the PIP appears to be more

¶10    On review, the appellant argues that, in considering whether the performance standards were valid, the administrative judge erred in applying 5 U.S.C. § 4302(b)(1), rather than 5 U.S.C. § 4302(c).  PFR File, Tab 1 at 16-19.  As noted above, the National Defense Authorization Act of 2018 redesignated subsection 4203(b) as subsection 4302(c).  Pub. L. No. 115-91, § 1097(d)(1)(A), 131 Stat. 1283, 1619 (2017).  Accordingly, section 4302(c)(1) now sets forth the statutory requirements for a valid performance standard, i.e., to the maximum extent feasible, performance standards must permit the accurate evaluation of job performance on the basis of objective criteria related to the job in question for each employee.  5 U.S.C. § 4302(c)(1).  Although the appellant is correct that the administrative judge incorrectly cited to section 4302(b)(1), rather than section 4302(c)(1), this citation error did not affect the outcome of the appeal because he set forth and applied the correct law for assessing whether performance standards are valid.  ID at 7-10; *see Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (providing that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

¶11    The appellant next argues that his performance standards were not valid because, counting the critical elements and their components, the PIP involved 6 "legally-defined elements" and his performance standards contained a total of 17 "legally-defined elements," which both exceed the limit of 5 critical elements approved by OPM.  PFR File, Tab 1 at 17-19.  The Board has long held, however, that a critical element may include subelements and that the incumbent of a position for which a compound standard has been established may be required to perform acceptably with respect to each of those subelements.  *Lee*, 115 M.S.P.R.

appropriately considered as a challenge to the adequacy of the appellant's opportunity to improve.  *See White*, 120 M.S.P.R. 405, ¶ 5.  Accordingly, we address the administrative judge's findings on this point and the appellant's challenges to them below in our discussion of whether the agency met its burden to show that it gave the appellant a reasonable opportunity to improve.

533, ¶ 31; *Shuman v. Department of the Treasury*, 23 M.S.P.R. 620, 627-28 (1984). Here, the subelements/components set forth under critical elements 1 and 2 contribute to the clarity of the appellant's performance standards by describing the quality, quantity, timeliness, and manner of performance required to be appraised at a particular level of performance and are consistent with his job description. *See Lee*, 115 M.S.P.R. 533, ¶ 31; *Shuman*, 23 M.S.P.R. at 627-28; 5 C.F.R. § 430.203 (defining "performance standard"). Thus, the fact that each broadly labeled critical element contained component parts does not render the performance standards invalid.

¶12     The appellant also argues that his performance standards did not conform to the "agency-wide performance levels" in the agency's Departmental Manual (DM), which define in general terms each rating level,[8] and instead required him to complete specific tasks.[9] PFR File, Tab 1 at 19-20; IAF, Tab 24 at 12-13. The Board's inquiry into the validity of performance standards, however, is limited to whether they permit the accurate evaluation of job performance on the basis of objective criteria and are reasonable, realistic, attainable, and clearly stated in writing. *Lee*, 115 M.S.P.R. 533, ¶ 29. Provided these requirements are met, an agency is free to set its performance standards as high as it thinks appropriate and to utilize "absolute" performance standards—i.e., under which a single incident of poor performance will result in an unsatisfactory rating on a critical element. *See Jackson v. Department of Veterans Affairs*, 97 M.S.P.R. 13, ¶¶ 9-15 (2004). Here, we find that the appellant's performance standards were valid because they

---

[8] For example, the DM defines "fully successful" as "a good, sound performance that meets organizational goals while effectively applying technical skills and organizational knowledge to get the job done." IAF, Tab 24 at 12-13.

[9] The appellant appears to raise this argument for the first time on review. Nonetheless, we have considered it because it appears to pertain to the validity of his performance standards. *See Neal v. Defense Logistics Agency*, 72 M.S.P.R. 158, 161 (1996) (stating that the agency must prove its action was based on valid performance standards, and the Board is obliged to consider this issue, regardless of whether it has been raised by the parties).

meet the statutory requirements and discern no merit to his contention that they are invalid because they require him to perform certain tasks rather than rating him in accordance with the general definitions in the DM.

¶13    The appellant additionally argues that the panel-reviewed funding proposal component of critical element 1 violates section 4303(b)(1)(A) because it is not about the "performance by the employee" performing the "critical elements of the employee's position."[10]  PFR File, Tab 1 at 13, 21-22.  As stated above, however, so long as performance standards are objective and meet the other statutory requirements, the Board will defer to the agency's managerial discretion to determine what the appellant must do to perform acceptably in his position.  *See Lee*, 115 M.S.P.R. 533, ¶ 29.  The requirement that the appellant submit a funding proposal for panel review is related to the appellant's duties and responsibilities and permits the accurate evaluation of his job performance on the basis of sufficiently objective criteria.  IAF, Tab 10 at 76-81.  Although the outcome of a panel review and the time required by the panel may be out of the appellant's control, he has not alleged or shown that the agency imposed the panel review requirement in an unreasonable manner.  *See Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1334, 1337 (Fed. Cir. 2004) (finding that a requirement that "[a]ll web pages be peer reviewed prior to final submission" was not invalid because the agency applied the requirement in a reasonable manner).  Accordingly, we discern no basis to conclude that the panel-reviewed funding proposal component of critical element 1 was invalid.

¶14    Lastly, the appellant argues that, in finding the performance standards attainable, the administrative judge erred by comparing his work, as the "only marine fish biologist," to the "non-fish biologists."  PFR File, Tab 1 at 9.  This

---

[10] Section 4303(b)(1)(A) provides that, when an agency proposes to demote or remove an employee for unacceptable performance under chapter 43, he is entitled to 30 days' advance written notice of the proposed action, which identifies the "specific instances of unacceptable performance by the employee" and "the critical elements of the employee's position involved in each instance of unacceptable performance."

cursory argument, however, does not establish error in the administrative judge's determination that his performance standards were attainable. Moreover, we discern no basis to disturb the administrative judge's decision to credit the appellant's supervisor's testimony that other scientists were able satisfy the same standards as the appellant, in addition to fulfilling their other duties, without complaint. *See Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016) (finding that the Board must defer to an administrative judge's demeanor-based credibility determinations "[e]ven if demeanor is not explicitly discussed").

¶15　　In light of the foregoing, we agree with the administrative judge that the appellant's performance standards were valid.

> *The administrative judge correctly found that the agency warned the appellant of his performance deficiencies and afforded him an opportunity to improve.*

¶16　　The agency next must prove by substantial evidence that it warned the appellant of the inadequacies of his performance during the appraisal period and gave him an adequate opportunity to improve. *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶¶ 6, 8 (2013). OPM's regulations governing performance-based actions under chapter 43 require that, "[a]s part of the employee's opportunity to demonstrate acceptable performance, the agency shall offer assistance to the employee in improving unacceptable performance." 5 C.F.R. § 432.104. The employee's right to a reasonable opportunity to improve is a substantive right and a necessary prerequisite to all chapter 43 actions. *Lee*, 115 M.S.P.R. 533, ¶ 32. In determining whether an agency has afforded an employee a reasonable opportunity to demonstrate acceptable performance, relevant factors include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time which is sufficient to enable the employee with an opportunity to demonstrate acceptable performance. *Id.*

¶17    Here, the appellant's supervisor advised him in the January 11, 2018 PIP memorandum that, as discussed at his October 2017 year-end performance review, his performance in critical elements 1 and 2 was unsatisfactory and that he would be placed on a PIP to allow him an opportunity to improve his performance in each element to at least minimally successful.  IAF, Tab 9 at 70-73.  She stated that, to be considered minimally successful by the end of the PIP period, the appellant must do the following:  (1) for critical element 1, independently develop and submit "one panel reviewed proposal for funding from outside of WRD" for a viable project that provided additional services to parks; and (2) for critical element 2, develop and obtain his supervisor's approval for an "interagency program initiative" supporting the goals of the NPS.  *Id.* at 72.  She further instructed him to submit weekly status reports regarding his progress, invited him to stop by her office if he had any questions, and warned him that failure to improve his performance to minimally successful in critical elements 1 and 2 by the end of the PIP period would be grounds for his removal or demotion. *Id.* at 72-73.  Although the PIP memorandum stated that the PIP would end on February 22, 2018, the appellant requested and received a 1-day extension due to the 1-day Government shutdown, and the PIP ended on February 23, 2018.  *Id.* at 70; IAF, Tab 8 at 72.

¶18    In the initial decision, the administrative judge found that substantial evidence established that the agency warned the appellant of his performance inadequacies in the January 11, 2018 PIP notice, as well as in his October 31, 2017 performance appraisal.  ID at 11-12.  Regarding the opportunity to improve, he found that the appellant received 42 days to demonstrate improvement, that this was a reasonable amount of time given the nature of the PIP, and that he should have been able, within 42 days, to develop and submit "at least one panel reviewed proposal" and to develop "at least one approved interagency program

initiative."[11]  ID at 12-14.  He found that the appellant's supervisor provided him adequate assistance by requiring him to submit weekly status reports regarding what he was doing to demonstrate improvement, sending him substantive guidance as to what he needed to do to improve his performance, and offering to speak to him about his progress.  ID at 14-15.  He considered but found incredible the appellant's claim that he was not informed that he was expected to obtain panel review of his funding proposal during the PIP period.  ID at 17-18.  In addition, he found incredible the appellant's claim that the status reports took 8 hours per week because he never rebutted his supervisor's testimony that she told him not to spend more than 30 minutes per week on them and because it appeared that he lacked time management skills when it came to this type of task.  ID at 9-10.  He thus concluded that the agency proved by substantial evidence

---

[11] In finding that 42 days was a sufficient amount of time for the appellant to complete the 2 requirements of the PIP, the administrative judge considered the fact that the appellant had been on notice of the deficiencies in his performance in critical elements 1 and 2 since his March 31, 2017 midyear performance review.  ID at 13.  As the administrative judge noted, the Board has previously considered prior warnings of unacceptable conduct in assessing the reasonableness of the opportunity to improve. *Id.*; *see Mattes v. Department of the Army*, 24 M.S.P.R. 477, 480 (1984) (noting in a chapter 43 appeal that, when the appellant received a prior warning of unacceptable performance and a reminder that timely submissions were critical, a 30-day improvement period "would have been sufficient" if the appellant had been given a reasonable opportunity to demonstrate improvement); *see also Ray v. Department of the Navy*, 34 M.S.P.R. 289, 292 (1987) (finding in a chapter 75 appeal that 45 days for an improvement period was sufficient when the appellant had also been issued letters of caution and reprimand).  Here, however, it is unclear how prior notice of the appellant's performance deficiencies in critical elements 1 and 2, which he received nearly a year before the beginning of the PIP at issue, relates to the reasonableness of his opportunity to improve *during* the PIP period.  IAF, Tab 10 at 7-8.  In any event, because we agree, on the basis of other factors, with the administrative judge that the appellant received a reasonable opportunity to improve, any error in this regard did not affect the outcome of the appeal.  *See Panter*, 22 M.S.P.R. at 282.  Because we do not consider the midyear performance review in our assessment of the opportunity to improve, we need not address the appellant's argument on review that the administrative judge erred in finding that the midyear performance review placed him on notice that he was "skating on thin ice" in critical element 2.  PFR File, Tab 1 at 23-24.

that the appellant received an adequate opportunity to improve his performance. ID at 15.

¶19    On review, the appellant reiterates his claim that the weekly status reports took him 8 hours per week and argues that the administrative judge erred in finding that his supervisor told him not to spend more than half an hour per week on them.  PFR File, Tab 1 at 5-8; ID at 9-10.  Although we agree with the appellant that his supervisor did not testify that she explicitly told him not to spend more than 30 minutes per week on the report, she did testify that she told him he was spending too much time on the weekly status reports and that she estimated they should only take about 30 minutes per week.  IAF, Tab 35, Hearing Transcript (HT) at 209-10 (testimony of the appellant's supervisor).  Nonetheless, we discern no basis to disturb the administrative judge's determination that the appellant's claim that the status reports required 8 hours per week is not credible.  The appellant has not rebutted his supervisor's testimony that she told him he was spending too much time on the status reports or her testimony that she did not require that the status reports be in any particular format.  *Id.*  In addition, the evidence of record, including the status report instructions in the PIP memorandum and the content of the reports themselves, which include a significant amount of recycled material from prior weeks, establish that they should not have taken the appellant a significant amount of time each week to complete.  ID at 9-10; IAF, Tab 9 at 5-68, Tab 10 at 72.  We further agree with the administrative judge that, if the appellant spent 8 hours per week on the status reports, it represents a failure on his part to properly manage his time, rather than an overly burdensome requirement that deprived him of a reasonable opportunity to demonstrate improvement.  ID at 10.

¶20    The appellant also argues that the administrative judge erred in finding incredible his claim that he was unaware of the requirement that he obtain panel review during the PIP period on the ground that he did not raise this concern in his response to the proposed removal.  PFR File, Tab 1 at 12-13; ID at 17.  He

argues that it is "irrelevant to the issue's fundamental credibility" when he elects to introduce an issue and that there is no statutory basis for requiring that all issues that could be raised during an appeal be included in the response to the proposed action. PFR File, Tab 1 at 13-14. Although there is no requirement that the appellant raise every argument he intends to raise before the Board in his response to the proposed action, the consistency of prior statements is a relevant consideration in assessing his credibility. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Accordingly, the Board has found an appellant's allegations less credible when he raised them for the first time on appeal. *See, e.g.*, *Reynolds v. Department of Justice*, 63 M.S.P.R. 189, 195 (1994); *Abatecola v. Veterans Administration*, 29 M.S.P.R. 601, 607 n.3, *aff'd*, 802 F.2d 471 (Fed. Cir. 1986) (Table). In addition, the Board routinely considers an appellant's response to the proposed action in assessing claims regarding deficient notice or confusion with the charges, *e.g.*, *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 11 (2013); *Mouser v. Department of Health & Human Services*, 30 M.S.P.R. 619, 624 (1986). We therefore find no basis to disturb the administrative judge's determination that the appellant's claim lacked credibility. Furthermore, the PIP memorandum specifically stated that, to be considered minimally successful in critical element 1, the appellant must submit "one panel reviewed proposal for funding," i.e., a funding proposal that had been reviewed by the panel. IAF, Tab 9 at 72. Thus, the appellant knew or should have known that he was required to obtain panel review of his funding proposal by the end of PIP period.

¶21     The appellant additionally appears to argue on review that he did not have a reasonable opportunity to demonstrate improvement because the panel review was out of his control. PFR File, Tab 1 at 21-22. While we agree that the panel's review of the appellant's funding proposal was not within his exclusive control, there is no reason here to find that the panel review requirement deprived him of a reasonable opportunity to improve given that he did not even submit his

proposal to the panel within the PIP period. *Cf. Sandland v. General Services Administration*, 23 M.S.P.R. 583, 591 (1984) (finding that the appellant did not receive a reasonable opportunity to improve when, as a result of his supervisor's actions during the improvement period, he was unable to perform the work required to demonstrate improvement); *Mattes v. Department of the Army*, 24 M.S.P.R. 477, 480 (1984) (finding that the appellant did not receive an adequate opportunity to improve when the late submission of three reports was caused by circumstances outside of his control).

¶22        The appellant also argues that the administrative judge failed to consider his total "compounded" workload during the PIP, which included "one plan, one proposal, a weekly reporting requirement, and maintaining performance on the seventeen 2018 performance appraisal components, i.e., a full-time workload plus the proposal, plan, and reports." PFR File, Tab 1 at 5-9. We find no merit to the appellant's argument that the administrative judge failed to consider his total workload in finding that he received an adequate opportunity to improve. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984) (recognizing that an administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). The administrative judge carefully considered the requirements of the PIP and concluded that the appellant should have been able to complete them within the 42-day period. The appellant has not specifically identified what other work he believes deprived him of a reasonable opportunity to demonstrate improvement in critical elements 1 and 2 during the improvement period, and there is no evidence reflecting that he raised concerns of this nature with his supervisor at any time during the PIP. Accordingly, notwithstanding the weekly status reports and the appellant's other work requirements, we find no basis to disturb the administrative judge's determination that 42 days was a sufficient amount of time to complete the limited tasks required by the PIP, especially in light of the fact that his supervisor

clearly advised him of the importance of focusing on those tasks during the PIP period. IAF, Tab 8 at 92, Tab 9 at 72-73.

¶23 The appellant next argues that the PIP requirements became more extensive over the course of his PIP. PFR File, Tab 1 at 23-24. As set forth above, the January 11, 2018 PIP memorandum specifically advised the appellant of his performance deficiencies and of what he must do to be rated minimally successful in critical elements 1 and 2 by the end of the PIP—namely, that he must complete one panel-reviewed funding proposal and one approved interagency program initiative. IAF, Tab 9 at 72. In addition, both the PIP memorandum and 2017 performance appraisal advised the appellant that he must meet all three components of each critical element and that failure to meet any one of the components would result in a failure to meet the minimally successful standard. IAF, Tab 9 at 71, Tab 30 at 8, 11. Ultimately, the appellant's supervisor found that the appellant failed to timely complete the tasks specified in the PIP notice and, for that reason, proposed his removal for failure to achieve an acceptable level of performance in either critical element 1 or 2. IAF, Tab 8 at 71-75. Accordingly, we find no merit to the appellant's claim that the requirements for him to successfully complete the PIP changed over time.

¶24 In sum, we discern no basis to disturb the administrative judge's determination that the appellant received a reasonable opportunity to improve. The Board has found that a 30-day PIP may be sufficient to satisfy an agency's obligation to provide an employee with a reasonable opportunity to demonstrate acceptable performance. *See, e.g.*, *Melnick v. Department of Housing & Urban Development*, 42 M.S.P.R. 93, 101 (1989), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table); *Wood v. Department of the Navy*, 27 M.S.P.R. 659, 662-63 (1985). Here, the appellant received 42 days to demonstrate improvement by completing one component of critical element 1 (submit one panel-reviewed funding proposal) and one component of critical element 2 (one approved interagency program initiative), and there is no evidence in the record that this length of time

unfairly prevented him from demonstrating acceptable performance. *See Papritz v. Department of Justice*, [31 M.S.P.R. 495](), 499 (1986) (finding that the appellant received a reasonable opportunity to improve when there was no evidence the length of the PIP unfairly prevented him from demonstrating acceptable performance). To the contrary, the record reflects that he received adequate time and substantial assistance to complete these limited tasks and that, despite being informed of the minimum requirements to pass the PIP and encouraged to discuss his progress with his supervisor, he never requested an extension or expressed any need for additional time. *See id.*

¶25  In light of the foregoing, we agree with the administrative judge that the agency met its burden to show by substantial evidence that it warned the appellant of his performance deficiencies and afforded him an adequate opportunity to improve.

> *The administrative judge correctly found that the appellant's performance remained inadequate in at least one critical element.*

¶26  Lastly, the agency must show by substantial evidence that, after an adequate improvement opportunity period, the appellant's performance remained unacceptable in at least one critical element. *Towne*, [120 M.S.P.R. 239](), ¶ 6. A detailed proposal notice can be considered part of an agency's valid proof of its allegations in a chapter 43 case; however, the proposal notice alone is insufficient to meet the agency's burden of proof and instead must be accompanied by corroborating evidence. *Thompson v. Department of the Army*, [122 M.S.P.R. 372](), ¶ 12 (2015). When an employee is removed on the basis of fewer than all the components of a performance standard for a critical performance element, the agency must present substantial evidence that the employee's performance warranted an unacceptable rating on the performance element as a whole. *Leonard v. Department of Defense*, [82 M.S.P.R. 597](), 599 (1999).

*Critical Element 1*

¶27    As noted above, the PIP memorandum stated that, to obtain a rating of minimally successful in critical element 1, the appellant was required to develop and submit "one panel reviewed proposal" for funding for a viable project that provided additional services to parks. IAF, Tab 9 at 72. To fulfill this requirement, the appellant sent the Division Chief a funding proposal for a Nature Fund "Fishscaping" project to "develop scientific capacity in fish echosounding" at 8:00 p.m. on February 22, 2018. IAF, Tab 8 at 81-85. In the proposed removal notice, the appellant's supervisor stated that, because he emailed his proposal to the Division Chief at 8:00 p.m. on the night before his PIP deadline, there was no time to obtain approval from the three supervisors who needed to review the proposal before submitting it for panel review. IAF, Tab 7 at 72. In addition, she noted that the appellant's late submission presumed that the panel "would actually be able to review [his] document with such little notice." *Id.* Thus, she concluded that the appellant's performance in critical element 1 was unsatisfactory. *Id.* The administrative judge found that the agency proved that the appellant's performance remained unacceptable in critical element 1 because he failed to fulfill his obligation to develop and submit at least one panel-reviewed proposal within the PIP period. ID at 16-18.

¶28    On review, the appellant argues that the administrative judge erred in finding that he did not improve his performance in critical element 1, ostensibly because he should not have been required to obtain the supervisory signatures and panel review during the PIP period. PFR File, Tab 1 at 12-14. As discussed above, however, we find unavailing the appellant's assertion that he was not aware of the requirement that he obtain panel review during the improvement period, as well as his alternative argument that he should not have been required to do so. While we acknowledge that the time required for a panel review is to some extent out of the appellant's hands, he did not even submit the completed proposal to the panel for its review within the PIP period. Rather, he waited until

8:00 p.m. on the night before the end of his PIP to request the first of the three supervisory signatures required before he could submit his funding proposal to Nature Fund for panel review.[12]  IAF, Tab 8 at 81, Tab 9 at 72.  Accordingly, we agree with the administrative judge that the agency established by substantial evidence that the appellant failed to demonstrate acceptable performance in critical element 1.

*Critical Element 2*

¶29    To be considered minimally successful in critical element 2, the PIP memorandum stated that the appellant must, by the end of the PIP period, have developed and obtained his supervisor's approval for an interagency program initiative with goals, objectives, activities, and expected outcomes that he would be able to start working on upon final approval.  IAF, Tab 9 at 72.  The appellant submitted two proposals to his supervisor in an attempt to fulfill this requirement.  IAF, Tab 8 at 47, 73.  First, on January 26, 2018, he proposed a "Fundamental Fishing Information pilot project and Program Initiative"; however, his supervisor informed him on January 26 and 29, and February 7, 2018, that his proposal was not interagency and would not satisfy the requirements of his PIP.  *Id.* at 92-99.  Second, on the evening before the end of his PIP, he emailed his supervisor requesting approval of an "ecosystem character and fishing impacts interagency program initiative."  *Id.* at 77-79.  Although it was the last day of the appellant's PIP, his supervisor responded the next day explaining that this idea was not interagency and suggesting they "discuss another option and timeframe for addressing this component of [his] assignment."  *Id.* at 77.  The appellant did not respond, testifying at the hearing that he did not open his email until after February 23, 2018, because he was busy working on his last status report.  HT at 148 (testimony of the appellant).  In the proposed removal notice, the

---

[12] As the appellant acknowledged in his email to the Division Chief, a Nature Fund requires that funding proposals have three supervisory signatures before being submitted to the panel.  IAF, Tab 8 at 81.

appellant's supervisor reiterated that neither of the appellant's proposals involved "interagency" participation and thus found his performance in critical element 2 to be unsatisfactory. IAF, Tab 8 at 73-74.

¶30    In the initial decision, the administrative judge found that substantial evidence supported the appellant's supervisor's determination that the appellant's two ideas were not interagency and that he failed to fulfill the requirements of critical element 2. ID at 18-20. In so finding, he observed that the appellant was negligent under the circumstances by failing to check his email on February 23, 2018. ID at 19.

¶31    On review, the appellant argues that administrative judge failed to consider his argument that the PIP notice did not inform him that he was required to obtain agreement from a partner agency to work on his plan and that his supervisor informed him of this requirement only after he submitted his February 22, 2018 idea. PFR File, Tab 1 at 15; IAF, Tab 38 at 17. Although the administrative judge did not address this argument, such error is harmless as the argument is clearly without merit. *See Panter*, 22 M.S.P.R. at 282. The PIP notice explicitly advised the appellant that he must obtain his supervisor's approval for an "interagency program initiative," i.e., a program initiative that involves another agency. IAF, Tab 9 at 72. Contrary to the appellant's characterization of his supervisor's rationale for finding he did not satisfy this requirement, she did not require him to have approval from a partner agency prior to the end of the PIP period; rather, she required that his program initiative idea involve collaboration with another agency. IAF, Tab 8 at 73. Although she stated in the proposed removal notice that the appellant's second proposal identified "no one else who had agreed to participate in the initiative," this observation was simply one of a number of things his proposal failed to do, in addition to not identifying another agency for collaboration, partner tasks, or roles or functions for another agency. *Id.* Finally, she noted that, "[a]ll of the listed tasks and outcomes were tasks that you would work on, and thus there was no 'interagency' participation." *Id.*

Accordingly, we find no merit to the appellant's contention that the PIP notice did not place him on notice of the requirement that his program initiative proposal involve participation by another agency and agree with the administrative judge that substantial evidence supports the agency's finding that the appellant's submissions did not satisfy this criterion.

¶32    The appellant also challenges on review the administrative judge's determination that he was negligent under the circumstances, arguing that he had to turn in his final status report on February 23, 2018, and that he believed the deadline for the program initiative was February 22, 2018.  PFR File, Tab 1 at 10-11.  In other words, he appears to argue that it was reasonable to spend his workday on February 23, 2018, on his final status report without checking his email because it was too late to make any further submissions towards successful completion of his PIP.  Even if the appellant believed that February 22, rather than February 23, 2018, was the last day of his PIP period, we agree that he acted in a negligent manner in failing to check his emails on a workday, which resulted in him not seeing his supervisor's email informing him that his initiative was not interagency and offering to "discuss another option and timeframe."  Nonetheless, the finding of negligence is not material to the outcome here because, as discussed above, the appellant failed to obtain his supervisor's approval for an interagency program initiative before the end of the PIP period, despite her numerous emails, expressed concerns, and offers to provide additional assistance and to work together to come up with an interagency program initiative idea.  IAF, Tab 8 at 92-99.  Thus, even if the administrative judge erred in finding that the appellant acted in a negligent manner, such error provides no basis to disturb the initial decision.  *See Panter*, 22 M.S.P.R. at 282.

*A rating of unsatisfactory in one component of a critical*
*element is sufficient for an overall unsatisfactory rating.*

¶33    The appellant further argues that the administrative judge erred in finding that his performance was unacceptable in critical elements 1 and 2 because he

successfully completed two of the three components of each critical element. PFR File, Tab 1 at 21-22; IAF, Tab 38 at 6-7. However, as the administrative judge correctly observed, the performance standards made clear that the appellant must meet "all three components" of the critical element and that a "[f]ailure to meet any one of the components will result in an overall failure to meet the minimally successful standard." ID at 16, 18; IAF, Tab 9 at 71, Tab 30 at 8, 11. Accordingly, we discern no basis to disturb the administrative judge's determination that the agency provided substantial evidence that the appellant failed to develop and submit one panel-reviewed funding proposal and one approved interagency program initiative and that he therefore failed to meet the minimally successfully standard for critical elements 1 and 2 as a whole, even if he satisfactorily completed the other components of the critical elements. *See Leonard*, 82 M.S.P.R. 597, ¶ 6.

*We must remand this appeal in light of Santos.*

¶34    Although the appellant has identified no basis for us to disturb the administrative judge's findings regarding the agency proving the elements described above, we must remand this appeal for the agency to prove an additional element of its charge. During the pendency of the petition for review in this case, the United States Court of Appeals for the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, 1363, that in addition to the five elements of the agency's case set forth above, the agency must also "justify the institution of a PIP" by proving by "substantial evidence that the employee's performance was unacceptable . . . before the PIP." The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Accordingly, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements. *See id.*, ¶¶ 15-17. On remand, the administrative judge shall accept

argument and evidence on this issue, and shall hold a supplemental hearing if appropriate. *Id.*, ¶ 17.

> On remand, the administrative judge should analyze the appellant's affirmative defense that the agency violated the collective bargaining agreement (CBA) under the harmful error standard.

¶35 In the initial decision, the administrative judge found that the agency did not violate the appellant's due process rights by giving him 15 days to respond to the notice of proposed removal and prohibiting him from entering his duty station and contacting his coworkers during the response period because he received a meaningful opportunity to respond to the proposed removal. ID at 20-21. He also found that, even if the agency violated the CBA by giving the appellant only 42 days to demonstrate improvement and 15 days to respond to the notice of proposed removal, he failed to show that such violation was harmful. ID at 13-14, 21-22. Accordingly, he concluded that the appellant failed to establish any affirmative defense.

¶36 On review, the appellant does not challenge, and we discern no basis to disturb, the administrative judge's determination that he did not prove any due process violation or that the 15-day response period constituted a harmful procedural error. However, he reiterates his argument that he should have received a 90-day improvement period pursuant to the CBA. PFR File, Tab 1 at 23.

¶37 In finding the appellant failed to prove this claim, the administrative judge relied on his determination that the agency met its burden to prove the charge including, as relevant here, that the length of the PIP was reasonable. ID at 13-14. We find his reliance on the agency's proof of its charge to be in error because the requirement for the agency to prove that it afforded an appellant with a reasonable opportunity to improve differs from the appellant's burden to prove harmful error. *See Lee*, 115 M.S.P.R. 533, ¶ 32 (discussing the relevant factors in determining if the agency afforded an appellant a reasonable opportunity to

improve). The harmful error standard applies to allegations of agency error in applying collective bargaining agreements in performance actions brought under chapter 43. *DeSousa v. Agency for International Development*, 38 M.S.P.R. 522, 526 (1988). When an appellant alleges that the agency committed a procedural error, he bears the burden of proving by preponderant evidence that the agency's procedural error caused substantial harm to his rights, i.e., that the agency would likely have reached different conclusion in the absence of the error.[13] *Wood*, 27 M.S.P.R. at 663; 5 C.F.R. §§ 1201.4(r), 1201.56(b)(2)(i)(C). A mere showing that there was a possibility of prejudice is insufficient. *Wood*, 27 M.S.P.R. at 663.

¶38　　Here, the appellant argued that the agency violated the CBA by not affording him at least 90 days to demonstrate improvement and that "[a]nother few days beyond the 42-day PIP would have made a significant difference in the outcome." IAF, Tab 38 at 7-8. Specifically, he alleged that, if he had been given a longer PIP period, he would have been able to obtain the three signatures required to approve his proposal and could have addressed his supervisor's concerns with the interagency program initiative program idea that he sent to her on February 22, 2018. *Id.* at 8. He also claimed that, if he had been given a 90- or 180-day PIP period, he "would have considered continuing to seek approval for the Fundamental Fishing Information pilot project and Program Initiative by further addressing his supervisor's many questions." *Id.* He alleges that he did not do so during his 42-day PIP because, given his supervisor's questions and comments, he decided to spend the last 15 days of his PIP "pursuing a different independent approach." *Id.* at 8-9.

¶39　　The agency disagrees with the appellant's contentions. It argues, in essence, that the appellant failed to show that if he was on the PIP for a longer

---

[13] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

period, he likely would have met the PIP requirements.  PFR File, Tab 3 at 10-11.  It points to testimony and documentary evidence reflecting that the appellant was on notice that his performance in critical elements 1 and 2 required improvement as early as March 2017.  PFR File, Tab 3 at 10-11.  Thus, this issue is in dispute and resolution may require credibility determinations.   Such determinations should be made in the first instance by the administrative judge who conducted the hearing.  *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 18 (2016).   Therefore, on remand, the administrative judge should make findings regarding the appellant's claim that the agency violated the CBA, applying the harmful error standard.  *See Wood*, 27 M.S.P.R. at 663.

¶40        In conclusion, we must remand this decision in light of *Santos* and for a new determination regarding the appellant's claim that the agency violated the CBA.  On remand, the administrative judge shall accept argument and evidence on whether the agency proved by substantial evidence that the appellant's pre-PIP performance was unacceptable, and shall hold a supplemental hearing on this issue if appropriate.  *Lee*, 2022 MSPB 11, ¶ 17.  The administrative judge shall then issue a new initial decision consistent with *Santos* and the guidance above.  *See id.*  If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate his prior findings on the other elements of the agency's case and the appellant's other affirmative defenses in the remand initial decision.  *See id.*  However, regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-PIP performance affects the administrative judge's analysis of the appellant's affirmative defenses, he should address such argument or evidence in the remand initial decision.  *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

**ORDER**

¶41     For the reasons discussed above, we REMAND this case to the field office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                                    ___/s/ for_____

                                                 Jennifer Everling
                                                 Acting Clerk of the Board

Washington, D.C.