# United States Court of Appeals for the Federal Circuit

―――――――――

**LAMONTE L. PURIFOY,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

―――――――――

2015-3196

―――――――――

Petition for review of the Merit Systems Protection Board in No. CH-0752-14-0185-I-1.

―――――――――

Decided: October 4, 2016

―――――――――

PHILIP CHARLES STERNHELL, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC, argued for petitioner.

ALEXIS J. ECHOLS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., SCOTT D. AUSTIN.

―――――――――

Before O'MALLEY, LINN, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Lamonte L. Purifoy appeals a final order by the Merit Systems Protection Board affirming the Agency's decision to remove him from his position over two charges of extended unauthorized absence. The Board's order reversed an administrative judge's reinstatement of Mr. Purifoy following a 40-day suspension. Because the Board's analysis improperly omitted relevant *Douglas* factors and discarded the AJ's credibility determinations without an adequate rationale, we vacate the Board's judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

In 2013, Mr. Purifoy missed two days of work as a housekeeping aid in a VA medical center in Milwaukee, Wisconsin without authorization. Later that same week, he sought treatment for substance abuse from the VA facility where he worked. He was admitted and transferred to Madison, Wisconsin for treatment. While Mr. Purifoy verbally informed his VA supervisor that he would miss work, he did not fill out leave paperwork. Nor did he inform his parole officer that he would miss upcoming supervision visits. After Mr. Purifoy missed these visits, his parole officer issued a warrant for his arrest. Mr. Purifoy contacted his parole officer by phone and explained that he had been admitted to a VA medical center for substance abuse treatment, but she refused to withdraw the warrant and told Mr. Purifoy to report to Milwaukee Secure Detention Facility ("MSDF") of the Wisconsin Department of Corrections.

Mr. Purifoy agreed to enter a substance abuse treatment at MSDF as an alternative to revocation of his parole. He entered the program, but was terminated after an altercation with another inmate. After his involve-

ment in the substance abuse treatment program ended, he remained as an inmate at MSDF for 38 more days. Following his release on November 4, 2013, Mr. Purifoy returned to work. Shortly afterwards, the Agency removed him from employment as a penalty for his unexcused absences.

## I.

The Agency first sent Mr. Purifoy a notice of proposed removal, drafted on July 29, 2013, while he was still at MSDF. The Agency charged him with one count of extended unauthorized absence beginning April 4, 2013. Mr. Purifoy responded, and the Agency rescinded the first notice letter. It then issued a second notice on October 8, 2013, with two counts of unauthorized absence. The first charge concerned Mr. Purifoy's absence from April 4 to 5, 2013, and the second charge concerned his absence due to his incarceration at MSDF, starting on May 7, 2013, and continuing through October 8, 2013.

On October 29, 2013, the Agency issued a decision removing Mr. Purifoy from his position effective November 15, 2013. Mr. Purifoy appealed the removal decision to the Merit Systems Protection Board.

## II.

An AJ held an in-person hearing to review Mr. Purifoy's case. *See Purifoy v. Dep't of Veterans Affairs*, No. CH-0752-14-0185-I-1, 2014 WL 6387880 (M.S.P.B. Nov. 13, 2014). Over the course of the day-long hearing, Mr. Purifoy not only testified, but also litigated the case pro se, cross-examining the government's four witnesses. The AJ sustained the Agency's first charge against Mr. Purifoy—his failure to report to work on April 4 and 5, 2013—in full. But she sustained the second charge—his absence while at MSDF—only in part. J.A. 14.

On the second charge—Mr. Purifoy's six-month absence from May 7, 2013 until his return to work on No-

vember 7, 2013—the AJ found that the Agency had failed to prove that Mr. Purifoy's absences while at MSDF prior to termination from the treatment program were unexcused. The AJ explained that Mr. Purifoy had "signed an agreement consenting to enter a substance abuse treatment program at MSDF as an *alternative* to revocation of his parole." J.A. 16. She found that "the primary purpose of his stay at MSDF was to undergo substance abuse treatment." J.A. 17. Moreover, the AJ found that Mr. Purifoy had notified his supervisor at the VA on several occasions that he would be absent for treatment. After his first absence on April 4 and 5, Mr. Purifoy called his third level supervisor to inform him that he would be in Madison, Wisconsin for treatment, and that he would be absent from work. *Id.* His supervisor replied with verbal approval of his leave request. As the AJ explained, the supervisor "told the appellant to 'go take care of that,' but that the appellant 'had something' coming for the two days he did not call in to report he would be absent." J.A. 12. Then, when Mr. Purifoy entered MSDF, he again told one of his supervisors that he would be absent. His supervisor testified that he responded, "I'm familiar with that. Take care of yourself. You need to take care of yourself first, . . . but you also need to see your supervisor and fill out the proper paperwork." J.A. 727. Mr. Purifoy did not submit leave paperwork with his employer. Even so, the AJ found that the Agency failed to prove that Mr. Purifoy's absences while seeking treatment at MSDF were unexcused. In turn, the AJ found that the Agency's charge of unexcused absence for six months was not wholly supported by substantial evidence.

The AJ also found that the Agency successfully proved part of its second charge: the 38 days after Mr. Purifoy's treatment program was terminated. J.A. 14–18. The AJ explained that, following an altercation with another inmate, MSDF terminated Mr. Purifoy's treatment and sentenced him to a disciplinary separation. J.A. 12.

Mr. Purifoy remained at MSDF for 38 days after termination. J.A. 17. As such, the AJ found that the Agency had sustained its charge of unexcused absence for those 38 days.

The AJ next analyzed the Agency's penalty in light of the mitigation factors set out in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 307–08 (1981), to determine if Mr. Purifoy's removal was reasonable. The AJ determined the penalty to be unreasonable and reduced it to a 40-day suspension.

The Agency had argued that the severity of Mr. Purifoy's conduct and his past disciplinary record justified removal, but the AJ found that, to the contrary, both of those factors mitigated in favor of Mr. Purifoy. The AJ explained that Mr. Purifoy's absence "was less severe than the six months absence the Agency had originally charged," and that this was his first disciplinary offense. J.A. 19.

The AJ examined the remaining *Douglas* factors and found that each weighed in favor of mitigation. The AJ found that Mr. Purifoy's duties as a housekeeping aid did not involve supervision or fiduciary duties, or place him in a prominent public role. She also noted that his work performance was rated as excellent and worthy of a performance award. The AJ further found that appellant was not on clear notice that his absence would result in severe discipline. The AJ additionally found that Mr. Purifoy's potential for rehabilitation was high, as he went to great lengths to notify his Agency of his whereabouts and, since his release from MSDF, had continued to participate in treatment for substance abuse without relapse. Finally, the AJ commented that "[i]t is ironic that the appellant's enrollment, with the agency's blessing, in a substance abuse program conducted by the agency ultimately led to his removal by the agency." J.A. 20. The AJ thus determined that, in light of the

reduced charge and the mitigating factors concerning Mr. Purifoy's absence, the maximum reasonable penalty in light of the sustained charges was a 40-day suspension. J.A. 21.

## III.

The government petitioned the Board for review. The Board reversed the AJ and reinstated the Agency's original penalty of removal. *Purifoy v. Dep't of Veterans Affairs*, No. CH-0752-14-0185-I-1, 2015 WL 3630677 (M.S.P.B. June 11, 2015). The Board first reviewed the two charges the Agency brought against Mr. Purifoy and left the AJ's judgment undisturbed, even though it did not affirmatively agree with the AJ's reduction of the second charge down from six months to 38 days. It explained that "the penalty of removal was appropriate even if the second charge was proven only in part." *Id.* at ¶ 6.

The Board then analyzed some, but not all, of the *Douglas* factors. It found that, contrary to the findings of the AJ, most of the factors weighed against Mr. Purifoy. It disagreed with the AJ about the seriousness of the charge, finding that the 40-day absence "remain[ed] a serious charge," even though the charge was reduced from the original charge brought by the Agency. *Id.* at ¶ 8. It also found that Mr. Purifoy's absence weighed against mitigation, even though he lacked a disciplinary record. It reversed the AJ's finding that Mr. Purifoy was not on clear notice that his continued absence from work would result in severe discipline, finding instead that Mr. Purifoy's third-level supervisor sufficiently notified him that his absence from work would result in severe discipline. And it found that "the agency's chosen penalty, which is entitled to deference, is also consistent with the table of penalties." *Id.* at ¶ 10. The Board also considered Mr. Purifoy's job performance and "s[aw] no reason to disturb the administrative judge's findings concerning [Mr. Purifoy's] brief, but good, work history."

*Id.* at ¶ 11. The Board further noted that Mr. Purifoy's seeking treatment for a disabling condition had been considered to be a mitigating factor. But the Board agreed with the Agency that "this factor was not significantly mitigating as the appellant was not fully pursuing rehabilitation for his problem." *Id.* at ¶ 11. The Board thus found that the Agency's penalty of removal was reasonable and reversed the AJ's decision.

Mr. Purifoy appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review a final decision of the Board to determine whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009).

Agencies taking an adverse action against an employee bear the burden to establish that an employee's charged conduct occurred, that it affected the efficiency of the service, and that "the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas*." *Malloy*, 578 F.3d at 1356 (citing 5 M.S.P.R. at 307–08). The *Douglas* factors are a non-exhaustive set of considerations that the Board must independently assess when relevant to determine whether a penalty was reasonable. *Id.*

Neither party challenges the sustained charges on appeal. Mr. Purifoy argues, however, that the Board's treatment of the mitigation analysis under the *Douglas* factors was inadequate. We agree. Even though the Board was required to consider each relevant *Douglas* factor, it failed to properly consider two factors relevant here. Specifically, the Board (1) did not consider the

adequacy and effectiveness of alternative sanctions to deter similar misconduct in the future, and the Board (2) erred in its analysis of the potential for the employee's rehabilitation. *See Douglas*, 5 M.S.P.R. at 305–06.

Turning to the alternative sanctions factor, the Board did not address this factor in the context of the lesser sustained 40-day absence. It should have done so. The Board is tasked with independently considering "the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others." *Id.* at 306. While the Board noted that the Agency's penalty fell within the range of penalties provided in the table of penalties (i.e., 14-day suspension to removal), it did not discuss the adequacy of lesser sanctions for the 40-day absence. Although we have repeatedly recognized that the Board need not consider all the *Douglas* factors, it must consider the relevant ones. *Nagel v. Dep't of Health & Human Servs.*, 707 F.2d 1384, 1386–87 (Fed. Cir. 1983). The factor is plainly relevant here, as the AJ had determined that the Agency's removal of Mr. Purifoy was too severe, and that a 40-day suspension would adequately punish his absence and deter similar conduct in the future. Additionally, the Agency chose the penalty of removal based on charges of a six-month absence. After the AJ reduced the six-month charge to 40 days, the Board should have evaluated this *Douglas* factor before sustaining the Agency's action. The Board thus erred when it did not consider whether lesser sanctions would have been adequate in Mr. Purifoy's case.

Turning to the rehabilitation factor, we determine that the Board erred by substituting its own finding for the AJ's opposite one without adequate rationale. The AJ had found that Mr. Purifoy's potential for rehabilitation was high:

> The record further reflects the fact that [Mr. Purifoy] cares about his job and has a good potential

for rehabilitation. He went to great lengths and took all available measures to notify his agency of his whereabouts. And though he did not complete the program at MSDF, he has continued to participate in treatment and has not suffered a relapse.

J.A. 20. The AJ made these findings in view of Mr. Purifoy's live testimony and his extensive pro se cross-examination of the government's witnesses. The AJ heard Mr. Purifoy testify under oath that he attends Alcoholics Anonymous meetings three days a week and that he has not suffered relapse since his removal. J.A. 816. Not only did the AJ observe Mr. Purifoy on the stand, but also the AJ had ample opportunity to observe Mr. Purifoy and his condition when he cross-examined witnesses, including his parole officer, his supervisor, and the Medical Center Director at the VA Medical Center in Milwaukee, Wisconsin.

Although the Board noted that it "s[aw] no reason to disturb the administrative judge's findings concerning the appellant's brief, but good, work history," it nevertheless reversed the AJ's ultimate finding on Mr. Purifoy's potential for rehabilitation. The Board found that this factor weighed against mitigation because, in the Board's view of the paper record, Mr. Purifoy was "not fully pursuing rehabilitation for his problem." *Purifoy*, 2015 WL 3630677, ¶ 11. But this bare conclusion gives insufficient consideration of, and deference to, the AJ's findings.

"The MSPB must afford special deference to the presiding official's findings respecting credibility where the presiding official relies expressly or by necessary implication on the demeanor of the witnesses." *Jackson v. Veterans Admin.*, 768 F.2d 1325, 1331 (Fed. Cir. 1985). As we recognized in *Haebe v. Department of Justice*, "the MSPB is not free to overturn an administrative judge's demeanor-based credibility findings merely because it disagrees with those findings." 288 F.3d 1288, 1299 (Fed. Cir.

2002). This requirement "derived from the substantial evidence standard expressed by the Supreme Court in *Universal Camera v. National Labor Relations Board*," *Id.* (citing 340 U.S. 474, 487–88 (1951)), where the Court recognized that "evidence supporting a conclusion may be less substantial when an impartial, experienced [administrative judge] who has observed the witnesses and lived with the case has drawn conclusions different from the Board's." *Universal Camera,* 340 U.S. at 496.

The government contends that this rule does not apply here because nothing in the AJ's opinion suggests that her credibility determinations were based on demeanor. But our case law requires deference not only when an AJ's credibility determinations explicitly rely on demeanor but also when they do so "by necessary implication." *Jackson*, 768 F.2d at 1331. Even if demeanor is not explicitly discussed, assessing a witness's credibility involves consideration of various factors, including a witness's demeanor.[1]

The AJ's findings about Mr. Purifoy's propensity for rehabilitation are necessarily intertwined with issues of credibility and an analysis of his demeanor at trial, and they deserved deference from the Board. *See Haebe*, 288 F.3d at 1299. The AJ necessarily made demeanor-based credibility findings in assessing, for example, the credibility of Mr. Purifoy's testimony that he attends AA meetings three times per week and has been sober for one year and five months, from the time of his first two-day ab-

---

[1]   For example, model civil jury instructions list demeanor as one of many factors for a jury to consider in determining the credibility of witnesses. *E.g.* Sixth Circuit Pattern Jury Inst. 1.07 (instructing a jury to: "Ask yourself how the witness acted while testifying. Did the witness appear honest? Or did the witness appear to be lying?").

sence through the time of his hearing. Indeed, the AJ's findings that Mr. Purifoy "cares about his job and has a good potential for rehabilitation," and that "he has continued to participate in treatment and has not suffered a relapse," J.A. 20, are findings based, at least in part, on Mr. Purifoy's credibility and demeanor as both a witness and an advocate at the hearing. The Board must afford these findings "special deference." By dismissing the AJ's findings without explanation, the Board failed to afford these findings the "special deference" required by law. *Jackson*, 768 F.2d at 1331.

Mr. Purifoy also challenges the Board's analysis with respect to two other *Douglas* factors: 1) the nature and seriousness of Mr. Purifoy's offense, and 2) the clarity with which Mr. Purifoy was properly on notice of any rules he violated or warned about the conduct in question. We see no legal error in the Board's analysis of these factors. Nor do we find the Board's conclusion on these factors unsupported by substantial evidence. Nevertheless, as "[s]election of an appropriate penalty must . . . involve a responsible balancing of the relevant factors in the individual case," we encourage the Board to revisit its analysis of these factors alongside all other relevant *Douglas* factors on remand. *See Douglas*, 5 M.S.P.R. at 306.

## CONCLUSION

Accordingly, we vacate the decision of the Board and remand for the Board to consider Mr. Purifoy's case in light of the relevant *Douglas* factors, consistent with this opinion.

**VACATED AND REMANDED**