NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SHARON FINIZIE, FLORENCE KOCHER,**
*Petitioners*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2021-1493

---

Petition for review of the Merit Systems Protection Board in No. PH-1221-18-0304-W-2.

---

Decided: November 3, 2021

---

FAYE COHEN, Law Office of Faye Riva Cohen, Philadelphia, PA, for petitioners.

MATTHEW JUDE CARHART, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., ELIZABETH MARIE HOSFORD.

---

Before LOURIE, DYK, and REYNA, *Circuit Judges*.

PER CURIAM.

Sharon Finizie and Florence Kocher (collectively, "Petitioners") appeal from the decision of the Merit Systems Protection Board ("the Board") dismissing their consolidated appeal under the Whistleblower Protection Act ("WPA"). We *affirm*.

## BACKGROUND

During 2016, Petitioners were employed at the Corporal Michael J. Crescenz Department of Veterans Affairs Medical Center. This appeal concerns three events in 2016 that Petitioners argue prompted protected disclosures by them under the WPA.

The first alleged disclosure concerns an argument between Kocher and her colleague, Patricia Simon, over a missing report ("First Incident"). J.A. 7–8. Kocher alleges that during the argument, Simon shouted, cursed, and gesticulated wildly. *Id.* Finizie witnessed the event. *Id.* Afterward, Kocher and Finizie jointly sent a report of the incident to their supervisor. J.A. 9, 41–42.

The second alleged disclosure concerns a crude sexual joke and shoulder massage directed to Finizie from Peter Leporati ("Second Incident"). J.A. 19. Eight days after this incident, Finizie reported the incident to her supervisor. *Id.*; J.A. 22. In her report, she wrote that Leporati intended to intimidate her. J.A. 23.

The last alleged disclosure concerns a finger gun pantomime that Leporati pointed at Kocher, accompanied by a "click, click" sound ("Third Incident"). J.A. 20. Six days later, Kocher reported the incident to her supervisor and Veterans Affairs ("VA") police headquarters. *Id.*

The agency's Administrative Investigative Board ("AIB") investigated the three incidents. It found that Kocher and Finizie had not been subject to a hostile work environment because the incidents were isolated. J.A. 66–67. Moreover, although Kocher alleged that her co-workers

bullied her, the AIB found that it was Kocher who had created a hostile work environment. *Id.*

Following AIB review, Petitioners suffered several negative consequences at work, which they allege were in retaliation for their protected disclosures. For example, a VA supervisor issued Kocher a memorandum regarding her misconduct, delayed issuing her evaluation, and proposed reprimanding her. J.A. 15, 16. The VA supervisor also moved Finizie to a smaller office. J.A. 3. Finizie has since retired. J.A. 2.

Kocher and Finizie each filed an appeal to the Board and, because their underlying claims are related, the Board consolidated their appeals.

The Board's administrative judge ("AJ") dismissed Petitioners complaint, holding that their reports regarding the three alleged incidents were not protected disclosures under the WPA. First, the AJ found that the First Incident was not evidence of wrongdoing by the agency and was, instead, an ordinary dispute among co-workers. J.A. 17–19. The AJ noted that such a "petty grievance" was not within the WPA. J.A. 17. Second, the AJ found that Finizie's allegations concerning the Second Incident were not credible because she did not expressly state that she was sexually harassed and did not mention this incident in an email to a union representative regarding a separate incident. J.A. 25–26. Third, the AJ found that Kocher's allegations regarding the Third Incident were not credible due to discrepancies between Kocher's testimony at the hearing and her allegations to the police. *Id.*

The AJ also noted that Kocher's demeanor during her own testimony and during Simon's testimony hurt her credibility. For example, the AJ observed that Kocher was "antagonistic," aggressively "chomping on gum," and "glowering" at Simon. J.A. 13.

Petitioners did not appeal the AJ's decision to the full board. The decision of the AJ thus became the decision of

the Board. *See* 5 C.F.R. § 1201.113(a). Petitioners then appealed to this court. Pursuant to 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9), we have jurisdiction over "final order[s] or final decision[s]" of the Board. *See Weed v. Soc. Sec. Admin.*, 571 F.3d 1359, 1361 (Fed. Cir. 2009).

## DISCUSSION

We review the Board's legal determinations *de novo* and its underlying findings of fact for substantial evidence. *See, e.g.*, *Welshans v. United States Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008). A court will not overturn an agency decision if it is not contrary to law and was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Lab. Rel. Bd.*, 305 U.S. 197, 229 (1938). "[T]he standard is not what the court would decide in a *de novo* appraisal, but whether the administrative determination is supported by substantial evidence on the record as a whole." *Parker v. United States Postal Serv.*, 819 F.2d 1113, 1115 (Fed. Cir. 1987).

The WPA prohibits an agency from taking a personnel action against an employee for disclosing information that the employee reasonably believes evidences a violation of law, rule, or regulation; gross mismanagement; a gross waste of funds; an abuse of authority; or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)–(9). The employee has the burden to establish, by a preponderance of evidence, that she made a protected disclosure and that her disclosure was a contributing factor to the agency's decision to take a reprisal action against her. *Id.*

If the employee establishes a prima facie case of reprisal, the Board will order corrective action unless the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action(s) in the absence of the activity or activities. 5 U.S.C. § 1221(e)(2).

Here, substantial evidence supports the Board's conclusion that none of the three disclosures asserted by Petitioners were protected disclosures.

For the First Incident, substantial evidence supports the Board's finding that Petitioners did not prove that they reasonably believed that Simon (1) violated a VA policy, or (2) threatened public safety. Petitioners did not state which specific policy they believed Simon violated and proffered no evidence that Simon's behavior threatened the public. This evidence supports the Board's finding that the incident was simply a workplace disagreement that did not fall within the scope of the WPA. In fact, the Board determined that Kocher herself initiated the confrontation and that her disagreement with Simon was purely verbal.

For the Second Incident, substantial evidence supports the Board's conclusion that Leporati did not engage in the described conduct. The Board found Finizie's testimony "simply not credible" in light of her behavior in reporting the incident. Finizie first reported the incident two days later to a union official. However, earlier that day, Finizie had emailed that same union official inquiring about the investigation of the First Incident but "inexplicabl[y] . . . did not mention the joke/massage incident in the same message." J.A. 25. Finizie waited six more days to bring the matter to her director's attention. The Board concluded based on Finizie's actions that "she fabricated the story because she believed the VA had taken no action on her complaint against Simon and was concerned that Leporati would support Simon regarding the [First Incident]." *Id*. The Board also reasonably credited Leporati's testimony that he did not recall telling an off-color joke or giving a massage.

For the Third Incident, substantial evidence supports the Board's finding that Kocher did not prove that she reasonably believed that Leporati's behavior threatened public safety. The Board found that Kocher's testimony was not credible. For example, Kocher's testimony to the police

varied from her testimony to the Board: Kocher told the police that Leporati did not make any noises when doing the gun pantomime, but she testified to the Board that he had made a "click, click" noise. The Board also found noteworthy, given the allegation's seriousness, that Kocher waited six days before reporting the incident to police. Lastly, the Board properly credited Leporati's statement that Kocher had been hostile to him earlier, calling him "perverted."

With respect to Petitioners' argument that it was "inappropriate, unprofessional, and perhaps defamatory" for the AJ to take into account Kocher's demeanor in making its credibility determinations, we disagree. It is appropriate for an AJ to take into account demeanor when assessing credibility. *See, e.g.*, *Purifoy v. Dep't of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016). Indeed, we have explained that credibility determinations based upon demeanor observations are entitled to special deference. *See id.*

In sum, substantial evidence supports the Board's conclusion that none of the events cited by Petitioners constituted protected disclosures under the WPA.

## CONCLUSION

For the foregoing reasons, the decision of the Board is *affirmed*.

## **AFFIRMED**

### COSTS

No costs.