# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KIM ANNE FARRINGTON,
　　　　　Appellant,

　　　　v.

DEPARTMENT OF
　　TRANSPORTATION,
　　　　　Agency.

DOCKET NUMBER
AT-1221-09-0543-B-2

DATE: March 15, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Stephanie L. Ayers, Esquire, and Thad M. Guyer, Esquire, Medford,
　　Oregon, for the appellant.

Elizabeth J. Head, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1　　The appellant has filed a petition for review of the initial decision, which denied corrective action in this individual right of action appeal. On petition for review, the appellant makes the following arguments: (1) the statute at 5 U.S.C. § 2302(f)(2) does not apply to her because her disclosures were not made in the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

normal course of her duties; (2) she proved that her disclosures were a contributing factor in the agency's decision to take various personnel actions against her; (3) the agency abandoned its laches defense and the administrative judge erred in her analysis of this issue; and (4) she was prejudiced by the administrative judge's delay in issuing the initial decision and her credibility determinations were erroneous. *Farrington v. Department of Transportation*, MSPB Docket No. AT-1221-09-0543-B-2, Petition for Review (PFR) File, Tab 27. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).

¶2 After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to find that 5 U.S.C. § 2302(f)(2) applies to this matter because the appellant's disclosures were made in the normal course of her duties. We VACATE the administrative judge's findings regarding laches and the agency's burden to prove by clear and convincing evidence that it would have taken the actions absent the appellant's whistleblowing disclosures. Except as expressly modified herein, we AFFIRM the initial decision.[2]

---

[2] The Association of Flight Attendants-Communications Workers of America requested leave to file an amicus curiae brief in support of the appellant. PFR File, Tab 16. The Board, in its discretion, may grant such a request if the organization has a legitimate

The statute at 5 U.S.C. § 2302(f)(2) applies to this appeal because the appellant made her disclosures in the normal course of her duties, and we agree with the administrative judge that the appellant did not prove that the agency took the personnel actions against her in reprisal for her disclosures.

¶3      Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), an appellant may establish a prima facie case of retaliation for whistleblowing disclosures and/or protected activity by proving by preponderant evidence that (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D),[3] and (2) the whistleblowing disclosure or protected activity was a contributing factor in the agency's decision to take, fail to take, or threaten to take or fail to take, a personnel action against her.  5 U.S.C. § 1221(e)(1); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015).  If the appellant makes out a prima facie case, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the whistleblowing disclosure(s).  5 U.S.C. § 1221(e)(2); *Webb*, 122 M.S.P.R. 248, ¶ 6.

¶4      Prior to the WPEA's enactment, disclosures made in the normal course of an employee's duties were not protected.  *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶¶ 10-12.  However, under a provision of the WPEA codified as 5 U.S.C. § 2302(f)(2), such disclosures are protected if the appellant shows that the agency took a personnel action "in reprisal for" the disclosures.

---

interest in the proceedings, and such participation will not unduly delay the outcome and may contribute materially to the proper disposition thereof.  5 C.F.R. § 1201.34(e)(3).  We find that an amicus curiae brief from the Association of Flight Attendants will not materially contribute to the proper disposition of this matter, and we deny its request.

On December 30, 2022, the appellant filed a motion for leave to file a new pleading, which appears to be a request to expedite processing of this matter.  PFR File, Tab 44.  Because this order is a final decision in this matter, we deny the appellant's motion.

[3] This appeal does not involve protected activity as set forth in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).

*Id.*, ¶ 10 (citing 5 U.S.C. § 2302(f)(2)).  This provision imposed an "extra proof requirement" for these types of disclosures such that an appellant to whom 5 U.S.C. § 2302(f)(2) applies must prove by preponderant evidence that the agency took a personnel action because of the disclosure and did so with an improper, retaliatory motive.  *Id.*, ¶ 11 (discussing S. Rep. No. 112-155, at 5-6 (2012)).

¶5        The National Defense Authorization Act for Fiscal Year 2018 (2018 NDAA), signed into law on December 12, 2017, amended 5 U.S.C. § 2302(f)(2) to provide that disclosures "made during the normal course of duties of an employee, the principal job function of whom is to regularly investigate and disclose wrongdoing," are protected if the employee demonstrates that the agency "took, failed to take, or threatened to take or fail to take a personnel action" with respect to that employee in reprisal for the disclosure.  *Salazar*, 2022 MSPB 42, ¶¶ 13-14; Pub. L. No. 115-91, § 1097(c)(1)(B)(ii), 131 Stat. 1283, 1618 (2017).  As we held in *Salazar*, 2022 MSPB 42, ¶¶ 15-21, the 2018 NDAA's amendment to 5 U.S.C. § 2302(f)(2), which clarified the prior version of that statute enacted in the WPEA, applies retroactively to appeals pending at the time the statute was enacted.

¶6        The administrative judge found that the appellant, as an Aviation Safety Inspector who was responsible for ensuring compliance with Federal Aviation Administration regulations and investigating and reporting wrongdoing, was covered by 5 U.S.C. § 2302(f)(2).  *Farrington v. Department of Transportation*, MSPB Docket No. AT-1221-09-0543-B-2, Remand File, Tab 38, Initial Decision (ID) at 13-14, 17.  The administrative judge, in analyzing the "extra proof requirement" regarding each personnel action, appears to have implicitly found that each of the appellant's four disclosures were made during the normal course of her duties.  ID at 29-40.  On review, the appellant contends that the case is governed by the Board's earlier decision in *Farrington v. Department of Transportation*, 118 M.S.P.R. 331 (2012), and its finding that "there was no duty

speech." PFR File, Tab 27 at 26. We supplement the initial decision to explicitly find that the appellant made her disclosures in the normal course of her duties.

¶7    In its earlier decision, the Board relied on the appellant's position description and concluded that she failed to make a nonfrivolous allegation that her disclosures to the National Transportation Safety Board (NTSB) were not made within her normal job duties within the normal channels of reporting. *Farrington*, 118 M.S.P.R. 331, ¶ 9. The appellant's position description stated that, as part of her surveillance duties and responsibilities, she is expected to "conduct investigations of . . . aircraft incidents and accidents" and to "[p]articipate[] in cabin safety related incident/accident investigations of air carriers and air operators." *Farrington v. Department of Transportation*, MSPB Docket No. AT-1221-09-0543-W-1, Initial Appeal File (IAF), Tab 19, Subtab B at 1-2. The NTSB is an independent Federal agency charged with "investigating every civil aviation accident in the United States," it determines the probable cause of accidents, and it issues safety recommendations aimed at preventing future accidents. National Transportation Safety Board, *About the NTSB*, https://www.ntsb.gov/about/pages/default.aspx (last visited Mar. 14, 2023). The appellant provided the head of the NTSB Survival Factors Group with a copy of her May 2003 written report and she was interviewed by the NTSB Survival Factors Group after the NTSB initiated its investigation into the March 26, 2003 AirTran incident. Based on these facts, we supplement the initial decision to find explicitly that the appellant's two disclosures to the NTSB were made within the normal course of her duties.

¶8    We now turn to the two disclosures that the appellant made to the Division Manager, including (1) the May 2003 written report, which discussed, among other things, lack of management support and funding approval, complaints about training at AirTran facilities, and inability to perform surveillance activities, and (2) her meeting with the Division Manager following an "All Hands" meeting on June 17, 2003 (for which the Division Manager took some handwritten notes). ID

at 18-20; IAF, Tab 19, Subtabs F, H.  In its Opinion and Order, the Board noted that there was a material dispute of fact concerning whether the appellant's communications to the Division Manager followed typical customs and practices in the workplace for reporting regulatory and safety issues to higher-level management.  *Farrington*, 118 M.S.P.R. 331, ¶ 8.  The Board defined "normal channels" as when an "employee conveyed duty-related information to a recipient, who in the course of his or her duties, customarily receives the same type of information from the employee and from other employees at the same or similar level in the organization as the employee."  *Id.*, ¶ 6.  The Board identified some of the factors that were relevant to the determination, including whether the communication complies with the formal and informal customs and practices in the employee's workplace for conveying such information up the chain of command, whether the organization enforces a strict hierarchical chain of command requiring that communications must go through lower-level supervisors before being elevated to higher management, and whether the information was conveyed to the recipient in the organization's commonly accepted manner or method for presenting such information for management consideration.  *Id.*

¶9      The appellant's position description stated that she would have "frequent contact" with, among other groups, "field and regional office management" and that the "purpose of these contacts is to . . . provide feedback, communicate findings, or resolve issues and problems."  IAF, Tab 19, Subtab B at 2.  It is undisputed that the Division Manager was the appellant's fourth- or fifth-level supervisor, *Farrington*, 118 M.S.P.R. 331, ¶ 8, and the information that she disclosed in the written report and subsequent meeting with the Division Manager was information that she learned during the normal course of her duties.  On review, the appellant cites to the Division Manager's testimony that he had an "open door policy," but she was never told that she had a duty to provide the Division Manager with the written report or speak to him after the June 17, 2003 meeting.  PFR File, Tab 27 at 12, 15.  In her deposition, the appellant testified

that she never spoke to the Division Manager prior to sending him the May 2003 report and she had never gone to him on a work-related issue. IAF, Deposition, Subtab 10 at 276 (testimony of the appellant). However, she acknowledged that, when there was a disagreement at the local level about an issue, the issue was elevated, and she does not appear to dispute the testimony of the Division Manager and the Assistant Division Manager that it was common for Aviation Safety Inspectors to work through local managers or to raise directly issues to the regional level. IAF, Deposition, Subtab 1 at 12 (testimony of the Division Manager), Subtab 7 at 3 (testimony of the Assistant Division Manager), Subtab 10 at 277 (testimony of the appellant).

¶10     Concerning the May 2003 written report, the appellant acknowledged in her deposition that she raised issues that she had attempted to pursue through her normal supervisory channels. IAF, Deposition, Subtab 10 at 276 (testimony of the appellant). The Assistant Division Manager responded in writing to the appellant's May 2003 report to the Division Manager, she acknowledged the safety issues that the appellant raised involving AirTran and her concerns about her own work environment, and she described the steps that the agency was taking to investigate these concerns. IAF, Tab 19, Subtab G. Given that the content of the May 2003 report was information that she learned during the course of her duties as an Aviation Safety Inspector, she provided the report to someone in her chain of command, it was a common practice for aviation safety inspectors to elevate disagreements on such issues to a higher level, and the agency's formal response to her concerns, we find that the appellant's May 2003 written report to the Division Manager was made in the course of her normal duties through normal reporting channels.

¶11     Concerning the June 17, 2003 meeting, the Division Manager's handwritten notes from this meeting included references to, among other things, "no crew

members trained hands on" with an arrow and the citation "121.417."[4] IAF, Tab 19, Subtab H. The appellant on review cites her testimony that she reported to the Division Manager that her findings and recommendations were not being addressed, that flight attendants had not been trained on the proper tail cone exit, and that passengers were at risk. PFR File, Tab 27 at 12. Thus, the appellant discussed with the Division Manager during this meeting her concerns based on information that she learned as an Aviation Safety Inspector. Neither party disputes that the Division Manager held regular "All Hands" meetings in the field offices, and he would often invite Aviation Safety Inspectors to speak with him afterwards, he had an "open-door policy," and Aviation Safety Inspectors "[r]outinely" took advantage of his open-door policy to speak to him about various issues. IAF, Deposition, Subtab 1 at 10-12, 17-18 (testimony of the Division Manager). Given that the appellant's conversation with the Division Manager occurred in the workplace, after a meeting in which the Division Manager invited Aviation Safety Inspectors to speak with him privately afterwards, the content of their conversation focused on work-related issues, and her position description contemplates such communications with field and regional office managers, we find that any disclosures made to him during this meeting were made during the normal course of her duties through normal reporting channels. Because we have found that all of the appellant's disclosures were made in the normal course of her duties as an Aviation Safety Inspector, the statute at 5 U.S.C. § 2302(f)(2) applies to this matter.

¶12      Even if we assume for the purposes of our analysis that the appellant proved that she disclosed a violation of law, rule, or regulation and/or a substantial and specific danger to public health and safety pursuant to 5 U.S.C. § 2302(b)(8)(A), we agree with the administrative judge that the appellant failed to prove that the agency took the personnel actions against her in reprisal for her disclosures. ID

---

[4] The regulation at 14 C.F.R. § 121.417 discusses crewmember emergency training.

at 29-40.  Because we affirm the administrative judge's finding in this regard, we need not address the appellant's arguments on review concerning contributing factor or whether the agency proved by clear and convincing evidence that it would have taken the action(s) at issue absent the disclosures.  PFR File, Tab 27 at 28; *see Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 28 (2016) (finding that it was inappropriate for the administrative judge to determine whether the agency proved by clear and convincing evidence that it would have denied the appellant's access to restricted areas and classified documents in the absence of his whistleblowing when she found that he failed to prove his prima facie case).  To the extent that the administrative judge made findings about laches that relieved the agency of its obligation to prove by clear and convincing evidence that it would have taken the same actions absent the appellant's disclosures, ID at 41-45, we vacate the administrative judge's findings in this regard.

<u>The appellant's arguments regarding the quality of the hearing recording, the administrative judge's credibility determinations, and her delay in issuing the initial decision do not warrant a different outcome.</u>

¶13    The appellant contends on review that the administrative judge's "extreme" delay in issuing the initial decision "severely prejudiced" her and violated her due process rights, Board procedures, and statutory mandates.  PFR File, Tab 3 at 6, Tab 27 at 5.  In pertinent part, she asserts that she was prejudiced because the audio recording from the 2-day hearing in 2013 was inaudible and that due to the delay in issuing the initial decision, the original court reporter passed away, the original court reporting company dissolved, and there was no usable audio recording of the hearing.  PFR File, Tab 27 at 5-6.  The submissions on review describe the parties' efforts to jointly contract with another court reporter to generate a transcript of the hearing under these circumstances.  *E.g.*, PFR File, Tabs 1, 3, 5, 7, 9, 11.  The Office of the Clerk of the Board subsequently granted the appellant's motion to file transcripts of the hearing proceedings.  PFR File,

Tabs 20, 22. However, instead of filing the transcripts in their entirety, the appellant reprinted excerpted portions of the 2013 hearing transcript in her supplemental petition for review. PFR File, Tab 27 at 12-26.

¶14 We acknowledge that the audio recording of the 2013 two-day hearing is virtually inaudible. The appellant's arguments on review do not persuade us that she was prejudiced by the delay between the close of the record and the date that the initial decision was issued. For instance, she asserts on review that the initial decision should be disregarded because it "barely contains any purported quotes of testimony," and "has few if any references to some witnesses," and she requests that the Board review the administrative judge's "harsh" credibility findings. *Id.* at 7. However, the administrative judge who issued the initial decision is the same administrative judge who was present during the 2-day hearing in 2013. The administrative judge's credibility determinations are implicitly based on witness demeanor, *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4 (2009), and the appellant's disagreement with the administrative judge's findings, without more, is insufficient to overcome the deference to which such determinations are entitled. *See, e.g.*, *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016) (explaining that the Board must give "special deference" to an administrative judge's demeanor-based credibility determinations, "[e]ven if demeanor is not explicitly discussed"); *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (stating that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so). Importantly, the appellant does not contend that the administrative judge was incapacitated or otherwise unable to take notes during the hearing or observe the testimony of witnesses, which might call her credibility determinations into question, nor does the appellant provide any authority to

support her assertion that the administrative judge erred by failing to include any quoted testimony.

¶15 We have reviewed the excerpts of the 2013 hearing transcript, which largely involve testimony concerning the appellant's disclosures, various agency officials' knowledge of the disclosures, circumstances surrounding some of the personnel actions, and the clear-and-convincing factors. *E.g.*, PFR File, Tab 27 at 12-26. However, the excerpted testimony does not change our analysis of whether any of the appellant's disclosures were made in the normal course of her duties through normal channels or whether she proved that the agency took the personnel actions in reprisal for her disclosures.

¶16 Finally, to the extent that the appellant may be arguing that her rights were harmed by the virtual inaudibility of the hearing tapes, we disagree. In *Harp v. Department of the Army*, 791 F.2d 161, 163 (Fed. Cir. 1986), the U.S. Court of Appeals for the Federal Circuit rejected a petitioner's claim that the unavailability of a hearing transcript constituted harmful error per se, requiring reversal of the Board's decision. The court found that "such loss is not fatal" to the court's ability to review a Board appeal. The court analyzed several factors to determine whether a fatal flaw occurred, such as whether the appellant established that he was prejudiced by the loss of the hearing transcript, whether the appellant showed that the administrative judge failed to consider or misused any particular testimony from the hearing, and whether other evidence existed in the record that would support the administrative judge's findings. *Id.*; *see also Kemp v. Department of Veterans Affairs*, 154 F. App'x 912, 914 (Fed. Cir. 2005)[5]; *Henderson v. Office of Personnel Management*, 109 M.S.P.R. 529, ¶ 5 n.1 (2008). Here, we find that the appellant did not show that she was prejudiced by the virtual inaudibility of the hearing tapes and she did not demonstrate that the

---

[5] The Board may follow a nonprecedential decision of the Federal Circuit when, as here, it finds its reasoning persuasive. *Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 13 n.9 (2016).

administrative judge failed to consider or misused any particular testimony of the witnesses that might have caused a different result in this case. Furthermore, although some or all of the hearing tapes may have been virtually inaudible, the record in this case was sufficiently developed to provide a meaningful review of the issues raised by the appellant.[6]

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[6] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you

receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

_____/s/ for_____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.