NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JAMES THOMAS RYAN,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

_____

2023-2238

_____

Petition for review of the Merit Systems Protection Board in No. DC-1221-14-0323-B-1.

_____

Decided:  April 8, 2024

_____

JAMES RYAN, Bel Air, MD, pro se.

JOSEPH ALAN PIXLEY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

_____

Before MOORE, *Chief Judge*, LOURIE, *Circuit Judge*, and ALBRIGHT, *District Judge*.[1]

PER CURIAM.

James Thomas Ryan appeals from a final order of the Merit Systems Protection Board ("the Board") denying his petition for review and affirming the denial of his request for corrective action under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8) ("WPA"). *See Ryan v. Dep't of Def.*, No. DC-1221-14-0323-B-1 (M.S.P.B. May 30, 2023) ("*Final Order*"), R.A. 1–26; *Ryan v. Dep't of Def.*, No. DC-1221-14-0323-B-1 (M.S.P.B. July 12, 2017) ("*Initial Decision*"), R.A. 27–50.[2]

For the following reasons, we *affirm*.

## BACKGROUND

From February 2009 until his removal in June 2017, Ryan was employed as a police officer by the Pentagon Force Protection Agency ("the Agency").[3] Throughout 2014 and 2016, Ryan filed a series of individual right of action ("IRA") appeals with the Board, alleging that the Agency had taken several adverse personnel actions against him in retaliation for various whistleblowing disclosures that he had made. *See Initial Decision*, R.A. 27, 31. His appeals were consolidated, and six of the eight disclosures forming the basis of Ryan's appeals were dismissed for lack of jurisdiction. *See id.* at 28, 31. We say no more as to those six disclosures, the dismissal of which Ryan does not challenge

---

[1]    Honorable Alan D Albright, District Judge, United States District Court for the Western District of Texas, sitting by designation.

[2]    "R.A." refers to the appendix filed with Respondent's brief.

[3]    We affirmed Ryan's removal from service in *Ryan v. Department of Defense*, 760 F. App'x 990 (Fed. Cir. 2019).

on appeal.  We focus instead on the two disclosures over which the Board concluded that it did have jurisdiction: a January 4, 2013 memorandum submitted to the Agency's Office of Professional Responsibility ("OPR") describing three incidents of alleged assault, and an April 5, 2013 memorandum submitted to OPR describing an additional incident of alleged assault.  *Id.* at 31.  A hearing to determine whether Ryan was entitled to corrective action based on either of those two disclosures was held before an administrative judge ("AJ") on May 4, 2017.  *Id.* at 32.

The first incident, disclosed in Ryan's January 4, 2013 memorandum, occurred during an honor guard assignment in or around June or July 2012 at the Raven Rock Mountain Complex in Pennsylvania.  *Id.* at 33–34.  Ryan alleged that a fellow police officer ("the accused officer") had attempted to embarrass Ryan by intentionally giving him conflicting commands causing him to be out of step with the rest of the detail.  *Id.* at 34.  According to Ryan, the accused officer mocked him, making him apprehensive and distracted from his duties.  *Id.*  The AJ concluded that, even assuming the accused officer had in fact given a false or conflicting command as Ryan claimed, Ryan could not have reasonably believed that he was assaulted because he did not allege that the accused officer intended to cause him fear of bodily injury.  *Id.* at 35.

The second incident occurred on August 28, 2012, in Mitchellville, Maryland.  *Id.*  According to Ryan, while both officers were on duty and surrounded by several fellow officers (including their lieutenant), the accused officer placed his left hand on Ryan's chest and pushed him, telling him to "get out [of] the way" in a taunting manner.  *Id.* (alteration in original).  The AJ concluded that, even assuming there was physical contact, Ryan could not have reasonably believed that the accused officer's conduct constituted assault.  *Id.* at 36.  The AJ reached that conclusion based on Ryan's subsequent characterizations of the interaction as an affront to his dignity (rather than as a threat

of bodily harm), the absence of any supporting witnesses (despite being in the company of several coworkers), and Ryan's history of raising unfounded accusations against coworkers. *See id.* at 36–37.

The third incident occurred on January 4, 2013, in Woodbridge, Virginia. *Id.* at 37. According to Ryan, he had had an argument with the accused officer over the volume of the radio in an agency vehicle. *Id.* When later retrieving equipment from the rear of that vehicle, the accused officer allegedly made unnecessary physical contact with Ryan, laughed, smirked, and said, "[y]ou better leave that alone or you'll get smacked." *Id.* According to Ryan, that interaction made him apprehensive and distracted from his duties. *Id.* at 37–38. Considering Ryan's sworn hearing testimony—characterizing the contact as, among other things, a "nudge"—as well as the hearing testimony of the accused officer and other record evidence, the AJ concluded that Ryan could not have reasonably believed the accused officer's conduct constituted assault. *Id.* at 38–40. The AJ further found that, even if the physical contact was intentional, nothing in Ryan's testimony or the evidence suggested that he perceived any threat of bodily harm. *See id.* at 40–42 (explaining, for example, that Ryan repeatedly testified that he was not alarmed or surprised by the accused officer's conduct).

The fourth incident of alleged assault, described in Ryan's second disclosure at issue, occurred on April 5, 2013. *Id.* at 42. Ryan alleged that, as he was entering an agency facility in Arlington, Virginia in plain clothes, the accused officer, who was on duty and in possession of an agency firearm, stared at him with a "scorn[ful]/resentful/angry expression on his face." *Id.* (alteration in original). Ryan alleged that the look he was given was an attempt by the accused officer to intimidate him with physical force. *Id.* Considering all the evidence relating to that incident, including the Chief of OPR's memorandum explaining that the recorded CCTV footage of the incident did

not corroborate Ryan's allegations, the AJ concluded that, even if those allegations were true, Ryan could not have reasonably believed that any degree of intensity or scorn he perceived in the accused officer's expression caused him to suffer an assault. *Id.* at 42–44.

Accordingly, because Ryan could not have reasonably believed that the accused officer's conduct on any of the four occasions constituted assault, the AJ held that Ryan's disclosures were not protected and that he was not entitled to relief under the WPA. *Id.* at 44.

Ryan petitioned for review. The Board denied his petition, holding that Ryan had not identified any error of fact or law in the AJ's decision. *Final Order*, R.A. 2. Ryan appeals from the Board's final order. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of the Board's decision is circumscribed by statute. We may not reverse a Board decision unless it is "(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Accordingly, we will generally not overturn a Board decision unless it is contrary to law, or it is not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

To establish a cause of action for whistleblowing under the WPA, Ryan must demonstrate by a preponderance of the evidence that at least one of his disclosures was protected under 5 U.S.C. § 2302(b)(8). A disclosure is protected if the employee "reasonably believes" the disclosure shows "any violation of any law, rule, or regulation[.]" *Id.* § 2302(b)(8)(A)(i).

Ryan challenges the Board's conclusion that the evidence does not support a finding that he *reasonably believed* that he had disclosed a violation of law, *i.e.*, an assault. The test for a purported whistleblower's reasonable belief is an objective one. The question is not whether Ryan *himself* subjectively believed the accused officer's conduct constituted a violation of law, but whether "a *disinterested observer* with knowledge of the essential facts" would reasonably conclude that the conduct constituted a violation. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999) (emphasis added). Ryan's "purely subjective perspective . . . is not sufficient." *Id.* Applying that objective disinterested observer standard, the Board's conclusions that Ryan could not have reasonably believed that the accused officer's conduct on any of the four occasions amounted to assault were supported by substantial evidence.

Ryan's primary challenge appears to rest on the deference that the Board afforded to the AJ's credibility determinations. *See generally* Ryan's Informal Br. at 2. But we have long held that the presiding official's (here, the AJ's) credibility determinations are "virtually unreviewable." *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986). Even so, the Board here did not simply accept the AJ's credibility determinations out of hand. Rather, it considered the evidentiary record as a whole and reasoned that the AJ's findings, which were "intertwined with issues of credibility" and Ryan's demeanor at the hearing, were afforded "special deference," which could not be rejected absent "sufficiently sound" reasons. *Final Order*, R.A. 17 (first quoting *Purifoy v. Dep't of Veterans Affs.*, 838 F.3d 1367, 1372–73 (Fed. Cir. 2016); and then quoting *Haebe v. Dep't of Just.*, 288 F.3d 1288, 1301 (Fed. Cir. 2002)). The Board found no such reasons, citing, among other things, the various inconsistencies in Ryan's characterizations of the incidents throughout the proceedings and the lack of any evidence or testimony corroborating Ryan's

representation of the events. *See Final Order*, R.A. 14–17, 19. We therefore see no error in the Board's deference to the AJ's credibility findings.

Ryan further argues that the Board erred as a matter of law by construing his disclosures as allegations of assault as opposed to battery. In his view, a "whistleblower is not obligated to properly label the disclosures," and the Board should have recognized that battery is considered an assault under the relevant state laws. Ryan's Informal Br. at 2. At least at common law, however, Ryan's burden of establishing battery would have been *higher* than his burden of establishing assault, as that offense requires more than a mere threat of bodily injury. *See, e.g.*, *Battery*, *Black's Law Dictionary* (11th ed. 2019) (requiring an intentional touching). We therefore see no benefit to Ryan in construing his allegations as the higher offense of battery. *See, e.g.*, *Assault and Battery*, *Black's Law Dictionary* (11th ed. 2019) ("Although the term *assault and battery* is frequently used when a battery has been committed, one who commits a battery cannot also be punished for committing an assault, since the lesser offense of assault blends into the actual battery." (citation omitted)).

If anything, the Board provided Ryan a more liberal review of the evidentiary record than the AJ, as it not only considered the common law definition of assault supplied by the AJ, *see Initial Decision*, R.A. 35, but also the definitions for assault provided under relevant state law. *See Final Order*, R.A. 7–8 (considering Pennsylvania law's definition of "simple assault" for the first incident); *id.* at 13–14 (considering Maryland law's definition of "second-degree misdemeanor assault" for the second incident); *id.* at 17 (considering Virginia law's definition of "assault" for the third incident). The Board reasonably concluded that, based on the evidentiary record as a whole, Ryan had failed to prove—under any of those definitions—that he reasonably believed he had been subjected to an assault, let alone a battery. And to the extent Ryan maintains that the

Board's application of those definitions was still too strict, we observe that the Board expressly focused on whether Ryan met the "*lower* burden of proving second-degree assault" under Maryland law, as opposed to that of first-degree assault which requires causing or attempting to cause *serious* physical injury. *Id.* at 14 n.11 (quoting Md. Code Ann., Crim. Law § 3-202) (emphases added). We therefore reject Ryan's assertion that the Board improperly used his "labeling of the disclosures as an assault" to deny him relief. Ryan's Informal Br. at 2.

For at least these reasons, we hold that the Board's conclusion that Ryan failed to prove by a preponderance of the evidence that his January 4, 2013 and April 5, 2013 disclosures were protected was not contrary to law and was supported by substantial evidence. The Board therefore did not need to consider whether those disclosures were a contributing factor in the alleged adverse personnel actions, or whether the Agency would have taken those actions in the absence of Ryan's disclosures. *See* 5 U.S.C. § 1221(e)(1)–(2).

## CONCLUSION

We have considered Ryan's remaining arguments and find them unpersuasive. Accordingly, the Board's final order denying Ryan's petition for review is *affirmed*.

## AFFIRMED

## COSTS

No costs.