# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SAMUEL ALAN OSBORNE,
           Appellant,

    v.

DEPARTMENT OF THE AIR FORCE,
           Agency.

DOCKET NUMBER
AT-1221-19-0077-W-3

DATE: August 7, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Samuel Alan Osborne, Santa Rosa Beach, Florida, pro se.

William Vincent Cochrane, Venus Owens, and Holly L. Buchanan, Eglin
    Air Force Base, Florida, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in his individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

review, VACATE the initial decision, and REMAND the case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant is employed by the agency as a Supervisory Range Operations Specialist, supervising approximately 40 employees. *Osborne v. Department of the Air Force*, MSPB Docket No. AT-1221-19-0077-W-1, Initial Appeal File (IAF), Tab 13 at 11, 24, Tab 14 at 24. In the fall of 2011, he filed a complaint with the agency's Office of Inspector General (OIG), as well as an internal appeal, regarding his conversion from the National Security Personnel System (NSPS) to the General Schedule (GS). IAF, Tab 1 at 34-36; *Osborne v. Department of the Air Force*, MSPB Docket No. AT-1221-19-0077-W-3, Appeal File (W-3 AF), Tab 22, Hearing Compact Disc (HCD), Track 7 at 17:50 (testimony of the appellant). He alleged that his then-supervisor's signature was forged on paperwork recommending the appellant's conversion at the GS-12 level instead of at the GS-13 level. IAF, Tab 1 at 6, 34-36; *Osborne v. Department of the Air Force*, MSPB Docket No. AT-1221-19-0077-W-2, Appeal File (W-2 AF), Tab 12 at 7.

According to the appellant, in 2012 and 2016, he informed management officials that the agency was improperly considering employees' community service in the granting of quality step increases (QSIs). IAF, Tab 34 at 16-17; HCD, Track 7 at 26:00 (testimony of the appellant). The appellant further told his supervisor and another agency official, including in emails in March 2017, that "[b]y [Code of Federal Regulations (CFR)] guidance and the limits placed on QSI's," his section was entitled to its own QSI because it had exceeded "34 personnel." IAF, Tab 1 at 53; W-2 AF, Tab 12 at 7. He pointed out that, for purposes of awarding a QSI, his section was included in a larger group of approximately 80 employees. IAF, Tab 1 at 53.

In October 2017, the appellant's second-level supervisor reprimanded the appellant based on two charges: discourteous conduct and deliberate misrepresentation. *Id.* at 46, 51-52. The discourteous conduct charge stemmed from an email the appellant sent to an agency contracting officer in August 2017, stating "if you think this isn't an issue . . . then you are invited to ride the 'Vomit Comet' on our next mission and maybe it will be a greater priority." *Id.* at 42, 46, 51-52. The Vomit Comet was the nickname of a boat needing repairs that notoriously made people sick when riding it. HCD, Track 7 at 33:00 (testimony of the appellant). The appellant's email and reference to the Vomit Comet sought to convince the contracting officer to expedite the documentation for funding to refurbish the boat. IAF, Tab 1 at 42-44, 46. The appellant also copied several other agency personnel on this email who were not originally included in his email exchange with the contracting officer. *Id.* at 42-44. As for the deliberate misrepresentation charge, the agency alleged that the appellant falsely claimed in his March 2017 emails to his supervisor and another agency official that, under the CFR, his section was entitled to its own QSI award. *Id.* at 46-47, 53.

The appellant subsequently filed a complaint with the Office of Special Counsel (OSC), alleging that the letter of reprimand was in retaliation for protected disclosures. *Id.* at 6-7. After receiving notice that OSC was closing out its investigation, he filed the initial appeal in this case. *Id.* at 3.

In the meantime, around August 2018, the agency revoked the appellant's telework eligibility. W-3 AF, Tab 7 at 70-75. According to the agency, the revocation was due in part to the need for the appellant to be physically present to supervise his 40 subordinates. *Id.* at 70-71. Moreover, per agency policies, the appellant's reprimand rendered him ineligible for telework. *Id.* at 14, 70-71. The appellant filed a second OSC complaint alleging that his telework eligibility was revoked in retaliation for his disclosures and first OSC complaint. W-2 AF, Tab 12 at 7. The appellant asserted below that the agency revoked his telework within weeks of the date he informed his supervisors that he had filed an OSC

complaint and planned to file a Board appeal. W-3 AF, Tab 8 at 5, 13. Following OSC's closure of its investigation into his second complaint, the appellant amended his IRA appeal to include the issue of whether the revocation of his telework eligibility was retaliatory. W-2 AF, Tab 14; W-3 AF, Tab 12 at 3-4.

After holding a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. W-3 AF, Tab 24, Initial Decision (ID) at 1-2. The administrative judge found that the Board has jurisdiction over the appellant's disclosure of alleged forgery of paperwork regarding his conversion from an NSPS to a GS position and his disclosure regarding the consideration of community service in awarding QSIs. IAF, Tabs 22, 40; ID at 7-9. Although, as noted below, he made no reference in his decision to the appellant's filing of an OSC complaint, he previously found that the Board has jurisdiction over this claim in his prehearing conference summary order. W-3 AF, Tab 12 at 3. In that same order, he found that the Board lacked jurisdiction over the appellant's threat to file a Board appeal. *Id.* Further, the administrative judge determined that the Board has jurisdiction over the agency's actions reprimanding the appellant and revoking his telework eligibility. IAF, Tabs 22, 40; W-2 AF, Tab 14. He found, however, that the appellant failed to nonfrivolously allege jurisdiction over his disclosure that his section was entitled to its own QSI. IAF, Tab 22 at 1; ID at 7.

As to the merits, the administrative judge concluded that the appellant failed to prove, by preponderant evidence, that his disclosure regarding the use of community service in awarding QSIs was protected. ID at 13. The administrative judge found that the appellant proved that his forgery disclosure was protected, but that he failed to demonstrate that it was a contributing factor in his reprimand or the telework revocation. ID at 9-12. Therefore, the administrative judge denied the appellant's request for corrective action. ID at 2, 14.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. He disagrees with the administrative judge's conclusion that the

Board lacks jurisdiction over his disclosure that his section was entitled to its own QSI. *Id.* at 2, 9-12. He also challenges the finding that he failed to prove by preponderant evidence that his disclosure regarding the use of community service in awarding QSIs was protected. *Id.* at 9-10. He disputes the administrative judge's finding that he failed to prove that his forgery disclosure was a contributing factor in his letter of reprimand and telework revocation, *id.* at 6-9, and contests the strength of the agency's reasons for these actions, *id.* at 1-4. He argues that the administrative judge improperly denied a witness, and that his counsel below failed to file motions to compel discovery. *Id.* at 10. Finally, he attaches documents he claims to be new and material and unavailable below despite his due diligence. *Id.* The agency has responded to his petition for review. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We agree with some of the administrative judge's jurisdictional findings, but remand for further jurisdictional determinations.</u>

To establish jurisdiction in a typical IRA appeal, an appellant must show by preponderant evidence that he exhausted his remedies before OSC, and make nonfrivolous allegations that: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 8 (2016), *overruled on other grounds by Requena v. Department of Homeland Security*, 2022 MSPB 39.

The parties do not dispute the administrative judge's findings of jurisdiction over two of the appellant's disclosures as set forth above and his activity of filing an OSC complaint. ID at 7-9; IAF, Tabs 22, 40; W-2 AF, Tab 14; W-3 AF, Tab 12 at 3. They also do not dispute his finding of jurisdiction over the appellant's reprimand and the revocation of his telework eligibility, and

that the appellant proved that his disclosure that someone had forged his supervisor's recommendation to transition him from the NSPS at the GS-12 level was protected. ID at 7-9. We decline to disturb these findings.[2]

> *The administrative judge properly determined that the appellant did not nonfrivolously allege that he reasonably believed his section was entitled to its own QSI.*

The appellant on review challenges the administrative judge's finding that the Board does not have jurisdiction over his disclosure concerning his section's entitlement to its own QSI. PFR File, Tab 1 at 2, 9-12; IAF, Tabs 22, 30; ID at 7. We are unpersuaded.

Protected whistleblowing occurs when an appellant makes a disclosure that he reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. 5 U.S.C. § 2302(b)(8); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 & n.3 (2013). The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced any violation of any law, rule, or regulation, or one of the other conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd*, 120 M.S.P.R. 365, ¶ 5.

The appellant argues that the administrative judge failed to apply a reasonable person standard. PFR File, Tab 1 at 9. In finding that the appellant

---

[2] Because the administrative judge found the appellant's forgery disclosures protected under 5 U.S.C. § 2302(b)(8), we do not need to reach the issue of whether these disclosures were also protected activity under 5 U.S.C. § 2302(b)(9)(C). ID at 9-10. That provision designates as protected activity complaints to the agency's OIG or other agency "component responsible for internal investigation and review." *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). Regardless of the basis for determining that the forgery disclosure was protected, the analysis of jurisdiction and the merits of the appellant's claim remain the same. *See Corthell*, 123 M.S.P.R. 417, ¶ 8.

failed to nonfrivolously allege that his March 2017 disclosure was protected, the administrative judge reasoned that he was "unaware of *any* authority supporting the appellant's position and therefore view[ed] this issue as a mere policy dispute." ID at 7 (emphasis in original); *see Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶¶ 7-9 (2015) (recognizing that general philosophical or policy disagreements with agency decisions or actions are not protected unless they separately constitute a protected disclosure of one of the categories of wrongdoing listed in section 2302(b)(8)(A)).

We agree with the administrative judge that a reasonable person in the appellant's position would not have believed that the agency's failure to provide more QSIs, by itself, evidenced gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. *See Garrison v. Department of Defense*, 101 M.S.P.R. 229, ¶ 9 (2006) (giving a subordinate a high performance rating against the direction of a superior is not a protected disclosure).

The appellant's main argument on review is that he reasonably believed his disclosure evidenced a violation of law, rule, or regulation. In his March 2017 email, the appellant referred to unidentified "CFR guidance and the limits placed on QSI's" to support his claim that his section was entitled to its own QSI. IAF, Tab 1 at 53. On review, he asserts that he provided the CFR reference to the agency. PFR File, Tab 1 at 2, 11-12. However, the appellant does not cite to any evidence in the record supporting his contention, and does not provide the CFR cite on review.

At the jurisdiction stage, an appellant is not required to identify the particular statutory or regulatory provision that the agency allegedly violated when his statements and the circumstances of those statements clearly implicate an identifiable law, rule, or regulation. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 17 (2011). Rather, he is only burdened with nonfrivolously alleging that he reasonably believed that his disclosure evidenced

such a violation. *Id.* The administrative judge appears to have found that the appellant's claim of authority supporting his section's entitlement to its own QSI was not reasonable.[3] ID at 7.

We agree. The statutes and regulations regarding QSIs do not support the appellant's contention as to the reasonableness of his belief. For example, 5 U.S.C. § 5336, which allows for QSIs, provides that such increases may be granted "in recognition of high quality performance above that ordinarily found in the type of position concerned," but only "[w]ithin the limit of available appropriations." 5 U.S.C. § 5336(a). The regulations implementing this statute reflect that an agency may, but is not required to, award a QSI based on outstanding performance. *Id.*; 5 C.F.R. §§ 531.201, .504. At most, this law suggests that QSIs should be awarded within fiscal limits and only when earned.

The appellant argues that the reasonableness of his belief regarding his March 2017 QSI disclosure is supported by his first-level supervisor's response. PFR File, Tab 9. He asserts that his first-level supervisor "believed the appellant was correct enough . . . to see the appellant[']s point." PFR File, Tab 1 at 9. Although the Board has held that the fact that other knowledgeable agency employees and former employees shared an appellant's concerns may lend some support to the reasonableness of his belief, *see, e.g.*, *Turner v. Department of Agriculture*, 2023 MSPB 25, ¶ 18, the record here does not support the appellant's assertion that his supervisor actually shared his belief. The appellant's supervisor responded to the appellant's March 2017 email that he "agree[d] [with the appellant] on all accounts." IAF, Tab 1 at 53. This response, however, was based on the appellant's inaccurate representation to his supervisor that the agency was violating the "CFR guidance" and unidentified "limits placed

---

[3] This is consistent with the administrative judge's finding on the merits of the appellant's remaining claims. Specifically, the administrative judge found that the agency's reason for reprimanding the appellant for his alleged deliberate misrepresentation in connection with the March 2017 disclosure was strong. ID at 10-11; IAF, Tab 1 at 47.

on QSI's." *Id.* Under these circumstances, we do not find that the supervisor's response supports the reasonableness of the appellant's belief. Because we agree with the administrative judge that the appellant's disclosure was not protected, we do not reach his remaining arguments on review regarding this disclosure. PFR File, Tab 1 at 8.

> *We remand the appellant's claim of perceived protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) for further adjudication.*

On review, the appellant re-raises his claim that his telework was suspended in August 2018 as "punishment" for his statement earlier in the month that he had filed an OSC complaint and planned to file an IRA appeal with the Board.[4] PFR File, Tab 1 at 9-10; W-3 AF, Tab 8 at 5, 13, Tab 12 at 3. As discussed above, the administrative judge correctly found that the Board has jurisdiction over the appellant's claim of reprisal for filing his OSC complaint. However, the administrative judge concluded that the threat to file an IRA appeal with the Board is not protected activity under whistleblower reprisal statutes. W-3 AF, Tab 12 at 3. This finding was in error.

The Board has IRA jurisdiction over a claim of reprisal for engaging in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), which includes "the exercise of any appeal . . . right" in which the appellant sought to remedy whistleblower reprisal. 5 U.S.C. §§ 1221(a), 2302(b)(8), (b)(9)(A)(i); *see Mudd*, 120 M.S.P.R. 365, ¶ 7 (recognizing that Congress expanded the Board's IRA jurisdiction in the Whistleblower Protection Enhancement Act of 2012 to include this type of activity). The Board has recognized that it has jurisdiction over a claim that an agency retaliated against an individual because it perceived that individual to have engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C). *Corthell*, 123 M.S.P.R. 417, ¶¶ 9-12. Such a perception may arise when an agency learns that an appellant has threatened to engage in the activity. *See Mausser v. Department of the Army*, 63 M.S.P.R. 41, 44 (1994) (observing that an

---

[4] He filed the instant appeal approximately 2 months later. IAF, Tab 1.

appellant might be entitled to protection under whistleblower protection statutes if he threatened to make, but did not actually make, a protected disclosure). We discern no basis to distinguish the Board's reasoning regarding perceived protected activity under section 2302(b)(9)(C) from perceived protected activity under section 2302(b)(9)(A)(i). Therefore, we remand this claim for a determination of whether the appellant established jurisdiction over this claim, *see Corthell*, 123 M.S.P.R. 417, ¶ 13, and, if so, for adjudication on the merits.

<u>We remand the appellant's claims of retaliation for his disclosure regarding the consideration of community service in awarding QSIs and filing an OSC complaint.</u>

The administrative judge found that the appellant failed to prove that he reasonably believed that the agency's consideration of community service in awarding QSI's evidenced wrongdoing under section 2302(b)(8). ID at 12-13. The appellant disputes this finding, arguing that he proved that he reasonably believed that the agency violated a law, rule, or regulation. PFR File, Tab 1 at 9. The administrative judge found that the appellant failed to identify any authority that "expressly prohibits" this consideration. ID at 13. We reverse this finding and remand the appeal for further consideration of this disclosure.

Ordinarily, at the merits stage of an IRA appeal, an appellant must identify the law, rule, or regulation that he believes an agency violated. *Langer v. Department of the Treasury*, 265 F.3d 1259, 1262-63, 1266 (Fed. Cir. 2001). However, "this requirement does not necessitate the identification of a statutory or regulatory provision by title or number, when the employee's statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation." *Id.* at 1266. Here, we find that the appellant's statements clearly implicate the requirement that QSIs be awarded based on performance.

The purpose of QSIs is to provide appropriate incentives and recognition for excellence in performance by granting faster-than-normal step increases.

5 C.F.R. § 531.503. As discussed above, performance is the only merit-based consideration enumerated in the statute regarding QSIs and its implementing regulations. 5 U.S.C. § 5336(a); 5 C.F.R. § 531.504. Similarly, per the agency's policy, QSIs "may only be given to employees who have exceeded all critical elements, and only to those employees who have displayed the highest quality performance, significantly above that ordinarily found in the type of position to which the employee is assigned and is expected to continue." IAF, Tab 14 at 105-06.

More generally, performance standards should be designed to measure performance on job criteria. 5 U.S.C. § 4302(c). Indeed, it is prohibited to discriminate against an employee on the basis of conduct which does not adversely affect the employee's performance. 5 U.S.C. § 2302(b)(10). We find that a person in the appellant's position could reasonably conclude that, to the extent the agency considered factors other than performance in awarding QSIs, it violated a law, rule, or regulation. *See Webb*, 122 M.S.P.R. 248, ¶ 6 (finding that an appellant need not prove the matter disclosed actually evidenced wrongdoing, but rather, that a reasonable person would believe it did). Therefore, we reverse the administrative judge's finding that the appellant's disclosure was not protected because he failed to specifically identify the law that the agency violated.

It is less clear from the record, however, whether the appellant reasonably believed that the agency was, in fact, considering community service in QSIs and whether he made such a disclosure. The appellant testified that employees he nominated in 2012 and 2016 were not awarded QSIs. HCD, Track 7 at 22:10 (testimony of the appellant). He indicated that the employees were eliminated because they did not receive awards based, in part, on community service. *Id.*; IAF, Tab 38 at 8-11. He further testified that he told the Deputy Director to the Special Operations Groups Commander (Deputy Director), who he alleges influenced the deciding official, about his concerns. HCD, Track 7 at 28:20

(testimony of the appellant). The Deputy Director, on the other hand, testified that the appellant never raised an issue to him about considering community service in awarding QSIs. HCD, Track 6 at 10:30 (testimony of the Deputy Director).

Because a finding on the reasonableness of the appellant's belief and whether he made the purported disclosure depends on the resolution of credibility and factual matters, we remand this appeal so that the administrative judge, who conducted the hearing in which these matters were addressed, can make the initial findings and conclusions as to those issues. *See Marchese v. Department of the Navy*, 65 M.S.P.R. 104, 109 (1994) (remanding an appeal for the administrative judge who held the hearing to make factual findings on disputed matters in the first instance).

As noted, the appellant on review reasserts the claim that his telework was suspended 2 weeks after he informed the agency that he had filed an OSC complaint. PFR File, Tab 1 at 9-10; W-2 AF, Tab 12 at 7; W-3 AF, Tab 8 at 5. Despite finding jurisdiction over this activity, which is protected under 5 U.S.C. § 2302(b)(9)(C), the administrative judge did not address in the initial decision whether the appellant proved the merits of this claim. W-3 AF, Tab 12 at 3. Because it is undisputed that the appellant did, in fact, file his first OSC complaint after receiving his letter of reprimand in October 2017, and OSC closed its investigation in September 2018, we find that the appellant proved by preponderant evidence that he engaged in protected activity. IAF, Tab 1 at 3, 6-7, 51-52. Thus, we must remand this claim for a determination as to whether the appellant proved by preponderant evidence that his OSC complaint was a contributing factor in the decision to revoke his telework eligibility in August 2018. W-3 AF, Tab 7 at 70-75; *see Corthell*, 123 M.S.P.R. 417, ¶ 8.

<u>The administrative judge correctly found that the appellant failed to establish that his forgery disclosure was a contributing factor in the personnel actions.</u>

The administrative judge found that the forgery disclosure, which occurred approximately 6 years before the personnel actions at issue in this appeal, was too distant to satisfy the timing element of the knowledge/timing test.  ID at 9-10. The parties do not challenge this finding on review, and we see no reason to disturb it.

The administrative judge then considered other evidence of contributing factor, but nonetheless found that the appellant failed to meet his burden.  ID at 10-12.  The appellant on review challenges this determination.[5]  PFR File, Tab 1 at 1-10.  We agree with the administrative judge.

The Board has held that, if an administrative judge determines that an appellant has failed to satisfy the knowledge/timing test, he shall consider other evidence in determining whether the appellant has met his burden on contributing factor.  *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012).  This other evidence includes the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant.  *Id.*

The administrative judge found that the agency had strong reasons to reprimand the appellant based on his discourteous email suggesting that a ship in need of repairs was a "Vomit Comet," and that if the contracting officer rode on it she would place greater priority on the funding of its repair.  ID at 10-11.  The appellant disagrees, arguing that the deciding official, his second-level supervisor, admitted to using "profanity and much more discourteous language"

---

[5] To the extent the appellant is challenging the underlying merits of the personnel actions, the Board lacks the authority to adjudicate the merits of the personnel actions at issue in this IRA appeal.  *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).  Further, the Board generally does not otherwise have appellate jurisdiction over a letter of reprimand or revocation of telework.  *See generally* 5 C.F.R. § 1201.3(a)-(b) (listing the bases for the Board's appellate jurisdiction).

with his peers. PFR File, Tab 1 at 7. He also seeks to deflect blame onto the contracting officer and the Deputy Director for failing to act on his funding requests. *Id.* at 1-2, 7-8.

We nevertheless agree with the administrative judge that the appellant's email was discourteous, especially given that he copied several individuals on the email who were not originally part of the exchange. IAF, Tab 1 at 46, 56-57. To the extent that the appellant is seeking to mitigate the severity of his misconduct, we cannot review the appropriateness of the agency's penalty in an IRA appeal such as this one. *Weaver v. Department of Agriculture*, 55 M.S.P.R. 569, 576 (1992); *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors relevant to penalty determinations in a chapter 75 appeal, including the consistency of the penalty and mitigating factors such as unusual job tensions or provocation on the part of others involved in the matter).

Further, the appellant does not claim that he raised his frustration with the funding process to the deciding official as a justification for his behavior. IAF, Tab 1 at 49. As to the alleged similar behavior of the deciding official, the appellant provides no specific citations in his petition for review. PFR File, Tab 1 at 7. To the extent he is relying on an email exchange the deciding official had with a peer that is contained in the record, this exchange reflects a mutual understanding of a more casual relationship. W-3 AF, Tab 8 at 232. Specifically, the deciding official's colleague first emailed, "Don't make me pop you in the mouth," to which the deciding official responded, "I'll crack you in the butt face!" *Id.* No other individuals were included on the exchange. We do not find this exchange similar to the appellant's one-sided email to the contracting officer. Finally, as the administrative judge observed, a letter of reprimand is a very low

level of discipline and evidenced a corrective response from the deciding official here.[6] ID at 11.

The administrative judge also found that the appellant's false claim that legal authorities supported his section's entitlement to its own QSI was a strong reason for the agency's charge of deliberate misrepresentation. ID at 10-11. We agree. IAF, Tab 1 at 46. The appellant argues that this is "double jeopardy," in that his first-level supervisor did not believe he misrepresented the CFR. PFR File, Tab 1 at 8. The appellant appears to be referring to the principle that an agency may not discipline an employee twice for the same misconduct. *See Frederick v. Department of Homeland Security*, 122 M.S.P.R. 401, ¶ 4 n.2, ¶ 6 (2015). This principle has no bearing on this appeal, as there is no allegation that the appellant was disciplined for his misconduct twice.

Finally, the appellant challenges the administrative judge's finding that the agency had strong reasons for revoking the appellant's telework. PFR File, Tab 1 at 3-4, 6, 8. The administrative judge credited the testimony of the appellant's second-level supervisor that the appellant's position required face-to-face interaction with his subordinates. ID at 11. He further agreed with this witness and the appellant's first-level supervisor that the agency's policy generally prohibited employees disciplined within the last year from teleworking, and that there was no deleterious effect on the agency's mission due to the telework revocation. ID at 11-12. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may

---

[6] The appellant further claims that the proffered reason for his letter of reprimand was not the real reason for the discipline, and that the agency admitted to such. PFR File, Tab 1 at 11. He raised this argument below, asserting that the deciding official provided additional, retaliatory reasons for the letter of reprimand. W-3 AF, Tab 8 at 12. What the appellant references is a list of concerns regarding the appellant's pattern of behavior outlined by the deciding official, and an urging of the appellant to take the discipline seriously. IAF, Tab 1 at 51-52. These concerns are not cited as justification for the discipline and do not demonstrate an alternative basis for the letter of reprimand.

overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Indeed, the Board must give "special deference" to an administrative judge's demeanor-based credibility determinations, "[e]ven if demeanor is not explicitly discussed." *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016).

The appellant challenges these credibility findings, arguing that "mission critical" positions, such as his, do not require telework suspension under the agency policies, and that his telework was revoked for 2 years rather than just 1 year as mandated by the policy. PFR File, Tab 1 at 3-4. He further argues that his duties were largely administrative, he did not need face-to-face interaction with subordinates, and his telework agreement had been approved for the last 8 years without any problem. *Id.* We find that the appellant has failed to identify sufficiently sound reasons for overturning the administrative judge's credibility determinations. As such, we decline to disturb his conclusion that the agency's reasons for revoking the appellant's eligibility to telework were strong.

The administrative judge next found that the appellant's forgery disclosure was not directed at the individuals responsible for taking the personnel actions. ID at 12. The appellant does not challenge this finding on review, and we see no reason to disturb it.

Lastly, the administrative judge found that there was no evidence that the management officials responsible for the personnel actions were involved in the decision to transition the appellant from the NSPS at the GS-12 level. ID at 12. Therefore, he concluded they did not have a motive to retaliate based on the appellant's forgery disclosure. *Id.* The appellant argues on review that there was a long-standing conflict between himself and the Deputy Director, who he alleges influenced his second-level supervisor to issue the reprimand and revoke the appellant's telework. PFR File, Tab 1 at 6-7. Moreover, he alleges that the Deputy Director was "in charge" of the transition to the GS scale for employees,

and thus he had a motive to retaliate against the appellant for alerting management to errors in that process. *Id.* at 4-7.

We are not persuaded by these contentions. In making his finding regarding the Deputy Director's lack of motive, the administrative judge relied on the testimony of the appellant's first-level supervisor that the Deputy Director was supportive of the appellant's internal appeal and efforts to be classified at the GS-13 level. ID at 12; HCD, Track 1 at 52:00 (testimony of the Commander). The appellant is essentially disagreeing with the administrative judge's credibility determinations, which we decline to disturb. *See Haebe*, 288 F.3d at 1301.

The appellant's remaining arguments on review are unpersuasive.

The appellant argues that his attorneys below failed to file motions to compel discovery, and generally claims that his attorneys provided ineffective counsel. PFR File, Tab 1 at 10. Even if true, the presence of inadequate counsel is not a basis for reversal because the appellant is held responsible for the action or inaction of his counsel. *Wynn v. U.S. Postal* Service, 115 M.S.P.R. 146, ¶ 7 (2010), *overruled on other grounds by Thurman v. U.S. Postal Service*, 2022 MSPB 21. Further, because the appellant did not file a motion to compel below, he is precluded from raising the discovery issue on review. *Szejner v. Office of Personnel Management*, 99 M.S.P.R. 275, ¶ 5 (2005), *aff'd*, 167 F. App'x 217 (Fed. Cir. 2006).

The appellant also argues that the administrative judge inappropriately denied a witness that both parties requested. PFR File, Tab 1 at 10. The administrative judge denied this witness as irrelevant in his prehearing conference memorandum. W-3 AF, Tab 12 at 4. There is no indication that the appellant objected to this ruling below and, thus, the matter is not properly preserved for review. *See McCarty v. Department of the Navy*, 67 M.S.P.R. 177, 180-81 (1995).

Finally, the appellant attaches what he purports to be new and material evidence on review. PFR File, Tab 1 at 10, 14-41. The Board will grant a

petition for review when, among other reasons, new and material evidence is available that, despite the petitioner's due diligence, was not available when the record closed. *Ellis v. U.S. Postal Service*, 121 M.S.P.R. 570, ¶ 6 (2014); 5 C.F.R. § 1201.115(d). The documents submitted by the appellant predate the close of record below, and the appellant has not explained why he did not submit them at that time. PFR File, Tab 1 at 10, 14-41; W-3 AF, Tab 12 at 1, 5; *see Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 213-14 (1980) (explaining that under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the record was closed before the administrative judge despite the party's due diligence).[7]

## ORDER

For the reasons discussed above, we remand this case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order. On remand, the administrative judge must make a finding as to whether the appellant established jurisdiction over his claim that the agency retaliated against him for threatening to file an IRA appeal and thus perceived him to be a whistleblower, and, if so, adjudicate that claim on the merits.

The administrative judge must also make a finding as to whether the appellant proved by preponderant evidence that he reasonably believed that the agency was using community service in awarding QSIs. If so, the administrative judge should proceed to make findings as to whether the appellant proved he made this disclosure and, if so, if he proved it contributed to the letter of reprimand or the revocation of his telework eligibility. The administrative judge

---

[7] The appellant also disagrees that the individual the administrative judge identified below as the appellant's second-level supervisor held this level of authority over him. PFR File, Tab 1 at 1, 6. We have continued to refer to this individual as the appellant's second-level supervisor for the sake of consistency. We are not persuaded that the use of this designation was improper and, in any event, any error is inconsequential and therefore does not warrant reversal of the initial decision. *See Panter*, 22 M.S.P.R. at 282.

must also make a determination as to whether the appellant proved that his OSC complaint was a contributing factor in the revocation of his telework.

If the appellant proves a prima facie case of retaliation as to any of these claims, the administrative judge shall decide whether the agency proved by clear and convincing evidence that it would have taken the same action or actions absent the appellant's protected disclosure, OSC complaint, or status as a perceived whistleblower. *See Corthell*, 123 M.S.P.R. 417, ¶ 8 (explaining that the Board will not order corrective action if the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure or activity).

In adjudicating the merits on remand, the administrative judge shall determine whether the parties had an opportunity to present testimony or evidence on the remanded issues. If not, he should hold a supplemental hearing. In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.

FOR THE BOARD: _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.